In re the ESTATE OF David WRAY, Decedent.

Minnie WRAY, Respondent,

v.

James WRAY, Appellant.

No. 61467.

Missouri Court of Appeals, Eastern District, Northern Division.

Dec. 1, 1992.

Walter D. McQuie, Jr., Montgomery City, for appellant.

Daniel W. Deiter, Montgomery City, for respondent.

AHRENS, Judge.

Appellant, James Wray, appeals from a judgment allowing in full the probate claim of respondent, Minnie Wray, pursuant to § 473.290 RSMo 1986. We reverse and remand.

On February 15, 1991, respondent filed a claim for $23,344.82 against the estate of her deceased husband, David Wray, seeking reimbursement for "payment due on debts of decedent, notes, charge accounts, charge cards, and debts paid by Claimant." Respondent sought to recover payments of (1) $3,114.04 on a note against the marital residence; (2) $6,574.22 on a note against a 1987 Dodge Daytona; (3) $700.00 on a note against a 1979 pick-up truck; (4) $4,009.00 on a note for the purchase of a hot tub; (5) $7,908.14 on a note for the purchase of a Chevy Blazer; and (6) $5,748.42 in credit card debt to Mastercard, Sears, and J.C. Penney.[1]

After hearing, the trial court allowed respondent's claim for $23,344.82 on January 17, 1992; in entering its judgment, the court found it was required "by law

---

1. The itemized payments total $4,709.00 more than the amount of respondent's claim; it is unclear why respondent claimed the lesser amount.

and the facts of the case" to allow the claim in full. Further, the court found it was without discretion "to apportion a portion of the claim to Claimant individually under Sections 473.290 and 473.387, [RSMo], or common law concepts of contribution and subrogation." We will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 73.01.

Appellant contends the trial court erred in finding it was required to allow respondent's claim in full under § 473.290 RSMo 1986. Further, appellant asserts that under common law principles of subrogation, indemnity, and contribution, respondent may not "recover from the estate the entire indebtedness paid by her while retaining all the property for which the indebtedness was incurred."

Section 473.290 RSMo 1986 provides:

—When any indebtedness of a decedent is secured by mortgage, pledge or other lien on property which is owned by another or which, on the death of decedent, becomes the exclusive property of another, but is not subject to administration, the indebtedness shall be allowed and paid as other claims unless it appears to the court that (1) the mortgage, pledge, or lien was given to secure payment of the purchase price of the encumbered property or of an obligation incurred in connection with the improvement of the property, or (2) the decedent did not actually receive a substantial consideration in the transaction in which the indebtedness arose, or (3) the decedent had exclusive ownership and control of the property during his lifetime and it appears from the loan or mortgage agreement or circumstances surrounding the transaction giving rise to the mortgage, pledge or lien that decedent intended that the security should be exhausted in case of his death before any payment thereon is made from his estate. If the holder of the secured debt does not institute proceedings for the allowance and payment thereof against the estate of the decedent within three months after publication of notice of letters, then before the time for filing of claims expires the owner of any property given as security for an indebtedness under circumstances described in this section may petition the court for such orders as are necessary for the protection of his rights and for the allowance of so much of the indebtedness against the estate as will be sufficient to exonerate the security. Notice of hearing on the petition shall be given to the executor or administrator and to the holder of the indebtedness. After hearing the court may make such order in the premises as may be necessary to preserve the rights of the parties, including, if proper, an allowance of the claim against the estate.

Here, both parties assert the property securing the indebtedness became respondent's exclusive property, not subject to administration, upon the death of respondent's husband. However, respondent herself testified that the notes against the house, the Chevy Blazer, and the Dodge Daytona were given to secure the purchase price of those items; therefore, it appears § 473.290 RSMo 1986 would not require an allowance of respondent's claims with respect thereto. Regardless, we need not in this case consider the application of the statutory exceptions to a mandatory allowance of the claims, because we find respondent was not entitled to pursue a claim under § 473.290 RSMo 1986.

█ Although our research has revealed no case law interpreting the provisions of § 473.290, the comment of the Committee on Legislative Research[2] in RSMo (Cum. Supp.1957) indicates the section is intended to apply in any of three situations, one of which is "where property [is] owned by one of tenants by the entireties or of joint tenants, and the other is not a principal

---

**2.** See chapter 23 RSMo for provisions governing the establishment and duties of the Committee on Legislative Research.

debtor." Here, respondent and decedent were joint obligors on the debts at issue. The record indicates both parties signed each of the notes in question, and respondent now owns all of the property for which the indebtedness was incurred. Moreover, respondent held and used each credit card on which she and decedent made purchases to accumulate the debt constituting that portion of her claim, even though decedent alone was listed as holder of the accounts. Nothing in the record indicates respondent and decedent were anything other than jointly and severally liable for the entire indebtedness. In our view, one who is jointly and severally liable is not permitted under § 473.290 to assert a claim for the indebtedness against the decedent's estate.

The record does not support respondent's contention that she was an "accommodation party" to the notes and liable thereon only as a surety. "Whether a party to a negotiable instrument is a co-maker or accommodation maker depends upon the intentions of the signers at the time of the execution of the paper[,]" and a co-maker who claims the signature was for accommodation has the burden to prove that contention. *Landmark KCI Bank v. Marshall*, 786 S.W.2d 132, 138 (Mo.App.1989). "The two primary indicia of accommodation status are that the accommodation party receives no direct benefit from the proceeds of the instrument, and that the signature is needed by the maker to acquire the loan." *Id.*

Here, respondent offered no evidence concerning the intentions of decedent or the holders of the notes, nor any evidence that decedent needed her signature in order to acquire the loans. Further, it is clear from the record that respondent did in fact directly benefit from the proceeds of the notes, in that she had possession and use of the property for which the notes were given. Respondent has failed to prove she signed the notes as an accommodation to decedent; rather, the evidence indicates she and decedent were co-makers.

Persons who sign as makers as part of the same transaction are jointly and severally liable unless the instrument specifies otherwise, and a maker who pays the instrument is entitled to contribution from other co-makers. *Id.* at 136. Here, decedent had an obligation to respondent, his wife and a co-maker on the notes, to contribute his proportionate part of the debt. *See Linders v. Linders*, 356 Mo. 852, 204 S.W.2d 229, 233 (1947). In an ordinary case, respondent would be entitled to contribution for one-half her payment on the notes. In this case, however, respondent upon payment of the notes received all of the property securing the indebtedness, and her receipt of that benefit must be considered in determining the amount decedent is obligated to contribute toward payment of the debt. *See* 18 Am.Jur.2d, Contribution § 26 ("security or indemnity received by one or more of several co-obligors in connection with the transaction giving rise to the common burden inures to the benefit of all and in equity, at least, ordinarily must be taken into consideration in the determination of the amount of contribution unless the circumstances are such that this would bring about an inequitable result").

Accordingly, we find respondent is entitled to contribution for one-half of any amount by which her payments on the notes exceeded the fair market value of the tenancy by the entirety property received by respondent and given as security for the indebtedness. Because the record before us contains no evidence concerning the fair market value of such property, we must remand to the trial court for a precise calculation of the amount of contribution, if any, due respondent from decedent's estate according to the method of calculation set forth herein. No such calculation is required, however, with respect to respondent's claim for repayment of the unsecured credit card debt for which she was jointly liable with decedent; respondent may recover one-half her payment thereon, an amount of $2,874.21.

Upon review, this court is authorized to enter the judgment the trial court should have entered under the evidence and the law. *Heintz v. Woodson*, 714 S.W.2d 782, 785 (Mo.App.1986). According-

ly, we reverse the trial court's judgment allowing respondent's claim for $23,344.82, order an allowance of $2,874.21 on respondent's claim for repayment of the unsecured credit card debt, and remand the case to the trial court for a determination of the amount of contribution, if any, due respondent for her payments on the secured notes. It is so ordered.

CRIST and CRANE, JJ., concur.