**Susan WOOD, Respondent,**

v.

**George WOOD, Appellant.**

**No. 22714.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 24, 1999.

Kay S. Graff, Springfield, MO., for appellant.

Kay A. Van Pelt, Springfield, for respondent.

ROBERT S. BARNEY, Judge.

This is an appeal from a judgment of the Circuit Court of Greene County, awarding Susan Wood ("Susan") the sum of $78,-401.23 against George Wood ("George") arising from a joint debt to Empire Bank. George appeals from the judgment. We reverse and remand with directions.

During their marriage the parties received a "line of credit" with Empire Bank, eventually amounting to $100,000.00 ("the Empire Bank debt").[1] As security for the various loan agreements entered into by both parties and Empire Bank, Susan allowed her "Essex Street" property to stand as collateral. The parties agree that the money was borrowed in order to start and operate a business incorporated as Woodco Manufacturing, Inc. ("Woodco"). However, Woodco was not a party to any of these loan agreements.

Susan and George's marriage was subsequently dissolved by a decree of dissolution January 2, 1991. The decree of dissolution incorporated a Separation Agreement executed by the parties on November 28, 1990. The decree ordered that "the non-marital property and marital property and marital debts be and are hereby divided and allocated in accordance with the Separation Agreement."[2]

1. As this Court understands the record, the parties signed five separate "Equity Credit" agreements with Empire bank, the first having been signed on February 8, 1989, and establishing an initial $40,000.00 "Line of Credit" and the remaining four gradually increasing the line of credit to the final amount of $100,000.00. This total sum was advanced to the parties.

2. Schedule "C–5" of the Separation Agreement lists the "marital debts" as follows:

(1) United Savings and Loan Association $14,790.00

(House and lot located at 2512 South Pickwick)

(2) Great Southern Savings and Loan Association $33,546.00
(second mortgage on house and lot located at 2512 South Pickwick)
[NOTE: $7,000.00 of this loan was contributed to Woodco Manufacturing, Inc.]

(3) Great Southern Savings and Loan Association $11,442.00
(House and lot located at 1701 East Central)

The Separation Agreement mentions the Empire debt primarily in two principal places. In the first instance the agreement states, *inter alia,* at page three:

> (c) All of the outstanding and issued shares of common stock of Woodco Manufacturing, Inc., shall remain in the joint names of the parties with right of survivorship and not as tenants in common and subject to the following additional restrictions:
>
> (1) At such time as any and all liability of [Susan], is satisfied with respect to the indebtedness of Woodco Manufacturing, Inc., owed to Empire Bank, including any obligation on her part to guarantee such indebtedness, and release of her non-marital residence therefrom as collateral is obtained, all as provided in paragraph 9(H), page 16 hereof, such stock shall be transferred into the sole name of [George], and shall become his sole and separate property free of any ownership claim [by Susan].

The second instance, at page 16, paragraph 9(H), consists of the following, in pertinent part:

> (H) It is further stipulated and agreed that [George], shall within one hundred twenty (120) months, commencing December 1st, 1990, obtain the complete and full release of [Susan], as an obligated party, including any obligation as a guarantor[,] on the indebtedness owed by Woodco Manufacturing, Inc., to Empire Bank of Springfield, Missouri, and which release shall also include the full and complete release of [Susan's] non-marital residence ... as collateral or other security for said indebtedness. Said release may be accomplished by

refinancing of said indebtedness, with substitute collateral, substitution of other guarantors, or renewal without [Susan's] name, or any other reasonable method which completely releases [Susan] thereon as well as her non-marital residence.

After the dissolution of their marriage Susan made all the payments on the Empire Bank debt.[3]

On April 12, 1991, a little over three months after their marriage was dissolved, the parties entered into a "Contract and Agreement" containing four provisions ("the April 12th contract"). Under the first two provisions, Susan received the "Pickwick property" and the debt associated with it, and George received the "Central property" and the debt associated with it. Additionally, the April 12th contract contained the following provisions:

> 3. [Susan] renounces all claims or form of ownership rights granted pursuant to the dissolution of marriage in and to, Woodco Manufacturing, Inc., and agrees further to execute any documents necessary to effectuate such transfer of rights. [George] agrees to hold [Susan] harmless and indemnify her from any and all creditors of Woodco Manufacturing, Inc.
>
> 4. [Susan] agrees to release [George] from all responsibility for any and all debts as imposed by decree of dissolution entered January 3, 1991, excepting his obligation for child support, children's medical expenses and $102.00 incurred by [Susan] on the [Central property].

The Separation Agreement also showed that the "Pickwick" property had a market value of $75,000.00, and that the "Central" property had a market value of $25,000.00. Under the agreement, the foregoing properties were to be listed for sale on or before March 1, 1991, and sold with net proceeds being shared 50%/50%, except that Susan was to receive "$7000.00" that represented "reimbursement to her of that portion of the second mortgage obtained from Great Southern Savings and Loan Association which was used to capitalize Woodco Manufacturing, Inc."

3. At the hearing, Susan testified that she had made payments amounting to $85,427.04 on the note and that the principal remaining due on the note amounted to $71,375.42. This totaled $156,802.46. Divided by two, this yields the amount of the judgment, $78,401.23.

The next action relevant to this appeal occurred on February 27, 1992, when Susan's attorney sent a letter to George demanding that he pay his share of the payments on the Empire debt. He refused.

On April 23, 1993, the underlying case was filed by Susan. Her petition consisted of four counts.[4] The trial court found for Susan on her fourth count ("Count IV"), discussed in detail *infra*. The trial court awarded Susan $78,401.23 as "one-half of all payments made by [Susan] on note to trial and one-half of balance remaining on note as of date of trial." George appealed raising two points of trial court error, discussed below.

■■■ "In a court-tried case, such as this, the judgment of the trial court will be affirmed by the appellate court unless there is no substantial evidence to support it, it is against the manifest weight of the evidence, or it erroneously declares or applies the law." *General Elec. Capital Corp. v. Rauch*, 970 S.W.2d 348, 353 (Mo.App.1998). "The trial court is free to believe or disbelieve all, part, or none of any witness's testimony." *Community Title Co. v. U.S. Title Guar. Co., Inc.*, 965 S.W.2d 245, 249 (Mo.App.1998). "The trial court may disbelieve testimony even when uncontradicted." *Id.* Further, "[w]e view the evidence and the concomitant inferences in a manner favorable to the prevailing party while disregarding all contradictory evidence." *City of Beverly Hills v. Velda Village Hills*, 925 S.W.2d 474, 475 (Mo.App.1996).

■■■ The normal rules of contract construction apply to marital settlement agreements. *Daily v. Daily*, 912 S.W.2d 110, 114 (Mo.App.1995). "When the language of a provision is in dispute, the court must determine the parties' intent as manifested in the document itself and not by what the parties say they intended." *Id.* "This is done by giving the words of the agreement their plain and ordinary meaning as understood by a reasonable and average person." *Id.*

■■■ The construction of a contract is generally a question of law. *Stephens v. Brekke*, 977 S.W.2d 87, 94 (Mo.App.1998); *see also Betz v. Fagan*, 962 S.W.2d 432, 435 (Mo.App.1998). A court will not resort to rules of contract construction to interpret a contract where the contract by its terms is unambiguous. *See Missouri Consolidated Health Care Plan v. BlueCross BlueShield of Missouri*, 985 S.W.2d 903, 909 (Mo.App.1999). A contract is not ambiguous merely because parties disagree over its meaning. *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 816 (Mo.App.1992).

In his second of two points, which we discuss out of order for the sake of clarity, George claims the trial court erred and/or abused its discretion in its judgment:

> because said judgment is not supported by substantial evidence, and/or is against the weight of the evidence and erroneously applies the law in that the judgment is based on allocating a debt and count IV fails to plead an equitable cause of action to divide property omitted from a dissolution action or allocate a debt and also disregards the provisions of the separation agreement ... as well as the subsequent contract of the parties.

■ We immediately observe that George incorrectly sets out more than one claim of error in his second point. He complains: (a) that the judgment is not

4. As best we can tell from Susan's petition and her subsequently filed "Suggestions in Opposition to Defendant's Motion to Dismiss," the first two counts of the petition requested the equitable reformation of both the separation agreement and the contract of April 12, 1991, due to: (1) mutual mistake; and (2) fraud or misrepresentation, respectively. The third count of the petition requested an "independent action in equity to divide unallocated marital debts." We need not address these counts as the trial court found for George on the first three counts of Susan's petition and she does not appeal this decision.

supported by substantial evidence, is against weight of the evidence, and erroneously applied the law in that the judgment is based on allocating a debt; (b) that "count IV fails to plead an equitable cause of action to divide property omitted from a dissolution action or allocate a debt"; and (c) that the judgment disregards the provisions of the separation agreement and the subsequent contract of the parties. "A statement of a point relied on . . . violates Rule 84.04 when it groups together multiple contentions not related to a single issue." *Biever v. Williams*, 755 S.W.2d 291, 293 (Mo.App.1988); *see also Thummel v. King*, 570 S.W.2d 679, 688 (Mo. banc 1978); *In re Marriage of Cohen*, 884 S.W.2d 35, 37 n. 1 (Mo.App.1994); *Carroll's Warehouse Paint Stores, Inc. v. Rainbow Coatings Corp.*, 835 S.W.2d 531, 532 (Mo.App. 1992).

 Additionally, in his argument under this point, George fails to discuss any portion of his actual point, instead he sets out apparent inconsistencies in Susan's own treatment of Count IV. He argues, without supporting authority, that "[a]n examination of Count IV of Plaintiff's Second Amended Petition reveals that there is no part of the pleading that requests a contribution in equity" and that "the pleading does not state an action for breach of contract. . . ." George concludes that he "can only infer that the [trial court] is operating under the theory of contribution in the judgment rendered." Although "[c]laims of error asserted in a point relied on but not developed in the argument portion of a brief are deemed abandoned," *City of Rolla v. Armaly*, 985 S.W.2d 419, 426–27 (Mo.App.1999), we shall gratuitously ascertain what cause of action Susan pled in her Count IV. *See* Rule 84.13, Missouri Court Rules (1999).

In Count IV of her second amended petition, Susan pled, *inter alia*, that the parties "executed and delivered to Empire Bank . . . their joint promissory notes entitled 'Equity Credit'"; that the "parties entered into a Separation Agreement on November 28, 1990, pursuant to a dissolution of marriage action filed by [Susan]" but the "agreement failed to divide the [$100,000.00] debt referred to in this action." Susan also pled that from the date of dissolution of their marriage, she had made all the payments on the notes in question pursuant to the demand of Empire Bank; and that on February 27, 1992, she had demanded that George pay under the notes in question and he had refused and paid no part of the amount. As relief, under Count IV, Susan prayed, *inter alia*, the trial court order George to pay "all sums that she has paid on said debt, from and after November 28, 1990," plus interest, "and . . . such other and further relief as the Court deems appropriate."

 We observe that the "general doctrine of contribution is not founded on contract, but is based on the principle of equality in bearing a burden, that is, wherever there is a common right the burden is also common." *Tindall v. Holder*, 892 S.W.2d 314, 323 (Mo.App.1994). "The doctrine of contribution finds its basis in general principles of equity and of natural justice, not contract." *Id.* at 323–24. "It is to be applied when one is compelled to pay more than his share of a common obligation that several persons are obligated to discharge." *Id.* at 324; *see also* 18 Am.Jur.2d, *Contribution*, §§ 9, 10 and 19 (1985). "Although there is authority to the contrary, it is not necessary that the entire debt should have been paid, but the payment must have been for more than the share of the person seeking contribution." 18 C.J.S. *Contribution* § 7 (1990). As a general rule, "[p]ersons who sign as makers as part of the same transaction are jointly and severally liable unless the instrument specifies otherwise, and a maker who pays the instrument is entitled to contribution from other co-makers." *In re Estate of Wray*, 842 S.W.2d 211, 214 (Mo.App.1992).

In *Transwestern Industries, Inc. v. Shue*, 537 S.W.2d 848, 849 (Mo.App.1976), plaintiff Institutional Agencies, was found

to have carried its full pleading obligation when "it alleged the joint execution of the note, its payment in full, the demand upon [defendant Shue] for contribution, and [defendant Shue's] refusal." *Id.* We determine that Susan's pleadings in the instant case are similar to those found in *Transwestern, supra.* We conclude that Susan properly pleaded a claim for equitable contribution, which formed the basis for the trial court's judgment. *Id.*

Returning to George's first point, he claims the trial court "erred and/or abused its discretion" in finding that the separation agreement entered into by the parties did not allocate the $100,000.00 debt to Empire Bank and in further finding that the contract of April 12, 1991, did not relieve him of liability for that debt "because said findings are not supported by substantial evidence, and/or are against the weight of the evidence." George maintains that the Separation Agreement allocated the Empire Bank debt to him and that, thereafter, the contract of April 12, 1991, relieved him of any responsibility for that debt. We disagree.

In its judgment the trial court specifically found that:

> 5. The Separation Agreement between the parties did not allocate the $100,000.00 joint debt of the parties with Empire Bank. Therefore the parties owe and are jointly liable as co-makers thereof.
>
> 6. [Susan and George] entered into a Contract on April 12, 1991.
>
> 7. The contract dated April 12, 1991, did not relieve [George] of liability for the $100,000.00 joint debt payable to Empire Bank as this debt was not referred to in the contract nor was it a debt "imposed by decree of dissolution entered January 3, 1991."

"For a contract to be valid and enforceable the nature and extent of its obligations must be certain." *Around the World Importing, Inc. v. Mercantile Trust Co.,* 795 S.W.2d 85, 90 (Mo.App.1990). "It must be sufficiently definite to enable the court to determine its exact meaning and to definitely measure the extent of the promisor's liability." *Ogilvie v. Ogilvie,* 487 S.W.2d 40, 41 (Mo.App.1972). As noted above, the only language contained in the Separation Agreement that pertained to the $100,000.00 debt and could conceivably have altered the parties' responsibilities concerning such debt, was the language that provided that George had 120 months from December 1, 1990, to "obtain the complete and full release of [Susan] ... including any obligation as a guarantor on the indebtedness owed by Woodco Manufacturing, Inc., to Empire Bank ... which release shall also include the full and complete release of [Susan's] non-marital residence...." [5] Although there appears to be a promise by George to obtain the complete and full release of Susan from the Empire Bank debt we are not convinced that this constitutes an express acceptance by George of the indebtedness. *See Ogilvie,* 487 S.W.2d at 41.

The record shows that installment payments were required to be made on the outstanding indebtedness to Empire Bank. Under the Separation Agreement, the fact that Susan may have been required to continue making these installment payments up to 120 months thereafter, runs counter to George's argument that the debt had been allocated to him or that he expressly assumed the debt. In our review of the plain language of the separation agreement, we are not convinced that George agreed to assume the Empire Bank debt. Both parties, as co-makers of the notes in question, continued to be jointly obligated for their payments.

---

**5.** We ascertain that the $100,000.00 debt in question was not an obligation of Woodco, per se. While it is clear the funds obtained were used to commence and maintain Wood-

co as a viable economic entity, as best we can glean, the loan documents make no mention of the company.

*Wray*, 842 S.W.2d at 214. Accordingly, under the particular facts of this case, the Empire Bank debt was not "imposed" by the decree of dissolution, as set out in paragraph 4 of the April 12, 1991, contract. This is because neither of the parties expressly assumed the Empire Bank debt as his or her sole obligation nor did the dissolution court expressly allocate the Empire Bank debt to either party. The obligation merely continued in existence as the debt of both parties. *See Id.*

We observe that the court in *Transwestern* held that once a prima facie case for equitable contribution is made by a plaintiff, "[i]f there [is] any contrary agreement between the parties or any other equitable reason why [Defendant] was not responsible for a contribution in that amount, the burden of alleging and proving such facts [is] upon [Defendant]." *Transwestern*, 537 S.W.2d at 850. Similarly, as to a pleading for contribution, "[i]t is generally sufficient if facts are averred which make out a prima facie case for contribution; facts which rebut the presumed equity to contribute should be set up by way of defense and need not be negatived in a complaint for contribution." 18 Am.Jur.2d *Contribution* § 121 (1985).

■■■ In this instance, once Susan established her prima facie case for equitable contribution by showing that a joint debt existed, that she had made more than her share of payments on the parties' joint obligation, and that she had demanded contribution from George, the burden shifted to him to show that his duty of contribution was relieved by the Separation Agreement and subsequent contract between the parties. *See Transwestern*, 537 S.W.2d at 849. By its judgment, it is clear that the trial court found that George did not meet this burden. On review, this Court defers to the trial court's ability to draw conclusions where there is conflicting testimony and to weigh the credibility of witnesses, their sincerity, character, and

other trial intangibles which the record may not reflect. *Rauch*, 970 S.W.2d at 353.

■■■ However, we determine that the trial court erred in assessing the amount of contribution that George was obligated to pay to Susan. "A voluntary payment which [a co-obligor] is not under legal obligation to make does not give a right of action against his co-obligors for contribution." 18 Am Jur 2d *Contribution* § 15 (1965). An "implied promise to contribute is considered as made at the time the common liability is assumed, and the right to sue thereon arises when a party has paid or satisfied the whole of the obligation or more than his share thereof." 18 Am. Jur.2d *Contribution* § 11 (1985). "Until then a claim for contribution is contingent only." *Id.*

The record shows that Susan has made payments of $85,427.04 on the Empire Bank debt. However, under the doctrine of equitable contribution she also was obligated to make half the [installment] payments on the parties' joint debt. *See Transwestern*, 537 S.W.2d at 849; *Wray*, 842 S.W.2d at 214("In an ordinary case, respondent would be entitled to contribution for one-half her payment on the notes.") In this instance, she is entitled to contribution only as to the amount that she has paid in excess of her 50 percent share of the amounts that have come due. *See Id.*; *Lock v. LaFevers*, 648 S.W.2d 640, 641 (Mo.App.1983)("Absent proof to the contrary, it is presumed that coobligors received equal benefit from the obligation and they must contribute equally to its payment."); *see also* 18 Am.Jur.2d *Contribution* § 19 (1985), *supra*.

Additionally, as best we can determine from the record, at the time of trial the principal amount of $71,375.42 remained payable. It is not clear from the record that this amount was immediately due and payable.[6] Furthermore, nothing in the

---

6. Susan testified at trial that "the obligation balloons on 2/28/1999" and affirmed that the

amount of the "balloon is projected to be $67,300.72."

record shows that Susan has made any installment payments on this remaining principal amount of $71,375.42. Until she pays an amount on the payments that come due that exceeds the 50 percent share she is otherwise obligated to pay, inclusive of principal and interest, her claim for contribution is contingent only and she has no right to sue for contribution. *See* 18 Am.Jur.2d *Contribution* § 11 (1985), *supra.* The trial court erred as a matter of law and its judgment is not supported by substantial evidence. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The judgment is reversed and the cause is remanded to the trial court. Upon remand, the trial court is directed to enter a judgment on behalf of Susan in an amount she has *paid* in excess of her 50 percent share of the Empire Bank debt. In this connection, the trial court may receive additional evidence.

MONTGOMERY, P.J., PREWITT, J., concur.