[Cite as *Hoppes v. Hoppes*, 2014-Ohio-447.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| NANCY A. HOPPES, Administrator of the Estate of Jerry N. Hoppes, | : | CASE NO. CA2013-03-006 |
| | : | |
| Plaintiff-Appellee, | : | O P I N I O N<br>2/10/2014 |
| | : | |
| - vs - | : | |
| | : | |
| NANCY A. HOPPES, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |
| | : | |


APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 11PC00247A


Bricker & Eckler LLP, Karen M. Moore, 100 South Third Street, Columbus, Ohio 43215-4291, for plaintiff-appellee, Nancy A. Hoppes, Administrator

Kiger & Kiger, David V. Kiger, 132 South Main Street, Washington C.H., Ohio 43160, for defendants-appellants, Kyle Sean Hoppes and J. Scott Hoppes

Roetzel & Andress, LPA, Stephen D. Jones, 155 East Broad Street, Columbus, Ohio 43215, for defendant-appellee, Nancy A. Hoppes, Individually

American Express Company, c/o CT Corporation, 1300 East 9th Street, Cleveland, Ohio 44114, defendant, pro se

Raymond F. Moats III, 3705 Marlane Drive, Grove City, Ohio 43123, for defendant, Credit Union of Ohio

Michael J. O'Reilly, 30 Hill Road South, Suite B, Pickerington, Ohio 43147, for defendant, O'Reilly Law Offices

John E. Bowers, 233 North Court Street, Circleville, Ohio 43113, for defendant, Farm Credit Services of Mid-Am

**M. POWELL, J.**

{¶ 1}   Defendants-appellants, Kyle Hoppes and J. Scott Hoppes, the surviving sons and heirs of Jerry Hoppes (Jerry), appeal a decision of the Fayette County Court of Common Pleas, Probate Division, finding that their stepmother, plaintiff-appellee, Nancy Hoppes (Nancy), is an accommodation party on a $686,000 note signed by both Jerry and Nancy.

{¶ 2}   Jerry and Nancy were married in July 1997.  Appellants are Jerry's adult sons from a previous marriage.  During his marriage to Nancy, Jerry owned a 463-acre farm and worked as a corrections officer at a local prison.  Nancy was not employed outside the home; her income (approximately $1,150 a month) consisted primarily of a small pension from her prior husband and social security disability benefits (Nancy has multiple sclerosis).  Nancy did not own any portion of the farm.  Jerry died unexpectedly and intestate on October 14, 2011.

{¶ 3}   During their marriage, Jerry and Nancy primarily charged their living expenses on an American Express credit card which was in Jerry's name with Nancy as an authorized user.  This was done to maximize the earning of rewards points on the American Express account.  Substantial sums were charged on this account by both Jerry and Nancy.  Jerry also had other credit cards, including a Chase credit card and a Bank of America credit card.  Nancy was not an authorized user on those cards.

{¶ 4}   During their marriage, Jerry and Nancy obtained several loans.  The primary purpose of these loans was to consolidate debt and refinance prior loans.  The loans were typically secured by Jerry's farm.  Thus, on February 24, 2003, Jerry signed a note with Merchants National Bank in the amount of $247,000 (the Merchants '03 Note).  The note was secured by Jerry's farm and was signed only by Jerry.  The record indicates that the purpose

of the loan was to "refinance."

{¶ 5} On March 11, 2005, Jerry and Nancy both signed a note with Merchants in the amount of $262,000 (the Merchants '05 Note). The note was secured by the farm. The proceeds of the loan were used to pay the balance of the Merchants '03 Note ($239,190.09) as well as several other small debts. Jerry also received $19,746.16 from the loan proceeds. Nancy did not receive any of the proceeds from the Merchants '05 Note.

{¶ 6} In 2005, Jerry and Nancy bought a Curves fitness center. To pay for the purchase, Jerry borrowed $121,500 from Huntington National Bank. Only Jerry signed the loan. In 2007 and 2008, two more Huntington loans were obtained for the business (see below). Jerry and Nancy subsequently attempted to sell the fitness center and it ultimately closed.

{¶ 7} On June 8, 2007, Jerry and Nancy both signed a note with Merchants in the amount of $280,000 (the Merchants '07 Note). The note was secured by the farm. The purpose of the loan was "debt consolidation." The proceeds of the loan were used to pay Huntington Bank $96,554.76 (the balance of the $121,500 loan for the Curves fitness center) and $76,333.21 (the balance of a $103,500 loan from Huntington taken out by Jerry in 2001). The proceeds of the Merchants '07 Note were also used to pay three of Jerry's credit cards: American Express ($29,556.51), Bank of America ($9,331.53), and Chase ($30,170.10). Finally, the proceeds of the loan were used to pay a Marriott Vacation Club time share ($18,397.57) and a John Deere account and Jerry's auto loan (for a combined total of $19,700.20).

{¶ 8} As stated earlier, additional money was borrowed from Huntington in 2007 and 2008 for the Curves business. Specifically, Jerry borrowed $20,000 on February 20, 2007, and $10,165 on November 6, 2008. Jerry also borrowed $35,000 from Huntington on April 12, 2008, for unknown purposes. Nancy did not sign any of the notes for these three loans.

{¶ 9}  On May 27, 2009, Jerry and Nancy both signed a note with Farm Credit Services of Mid-America in the amount of $686,000 (the Farm Credit Note).  The note was secured by a mortgage on Jerry's farm.  The proceeds of the note were disbursed as follows: (1) $510,764.77 to Merchants to pay the balance of both the Merchants '05 Note and the Merchants '07 Note; (2) $56,660.16 to Huntington to pay the 2007 Huntington loan and both 2008 Huntington loans, (3) $36,387.58 for the American Express credit card, (4) $48,200.83 for Jerry's Bank of America credit card, and (5) $30,139.90 for Jerry's Chase credit card.  Hence, the Farm Credit Note paid off the Merchants '05 Note, the Merchants '07 Note, the 2007 Huntington loan, both 2008 Huntington loans, and Jerry's credit card debts.

{¶ 10} Following Jerry's death, Nancy applied to be appointed administrator of his estate.  On December 8, 2011, the probate court appointed Nancy as administrator of the estate.  Appellants subsequently challenged the appointment.  On March 6, 2012, following a hearing on the issue, the probate court affirmed its prior appointment of Nancy as the administrator of the estate, as follows:[1]

> [R.C. 2113.06] gives priority to the surviving spouse unless the surviving spouse is found to be unsuitable to act as administrator.  In the present case, the deceased['s] two sons from a prior marriage argue that they are better suited than their step-mother and allege that their step-mother has a conflict of interest due to a dispute over who is responsible for indebtedness created during the marriage.  The Court finds that the deceased's two sons have the same conflict as their step-mother in regard to the division of indebtedness.

{¶ 11} Jerry's personal property was insufficient to pay his debts.  Consequently, on June 11, 2012, Nancy, as the administrator of his estate, instituted a land sale proceeding to sell the farm.  The complaint stated that Farm Credit, American Express, Credit Union of

---

1. The probate court affirmed the appointment of Nancy as administrator of the estate after "having considered the competing applications for appointment as administrator" and "the testimony and memorandum of law." Neither the transcript of the hearing nor the memorandum of law are included in the record.

Ohio, and a law firm all had claims against the estate.[2]

{¶ 12} Appellants filed an answer, counter-claim, and cross-claim. Appellants asserted that as a co-signer of the Farm Credit Note, Nancy owed the estate 100 percent of the debt owed on the note. Appellants also asserted that Nancy, in her individual capacity, owed the estate one-half of the American Express debt. Finally, appellants asserted that Nancy in her dual capacity had a conflict of interest because her individual interest in the estate conflicted with her duties as the administrator of the estate (Nancy had taken the position that in her individual capacity, she was not liable for the Farm Credit Note and the American Express debt. As a result, as administrator, Nancy made no claims against herself for payment of the debts). Appellants also asserted that as administrator, Nancy had incurred attorney fees in defending herself individually against her obligation to pay the debts. Consequently, appellants sought the removal of Nancy as administrator.

{¶ 13} In response, Nancy asserted that as administrator, she had determined that the estate was 100 percent liable for the debts; she was not personally liable for the Farm Credit Note because she signed it as an accommodation party; and she was not personally liable for the American Express debt. Further, appellants' conflict-of-interest allegation was moot as the probate court had already determined that such conflict did not exist. On January 10, 2013, appellants moved the probate court to compel Nancy to provide specific documents with regard to the Huntington loans and the Merchants notes. The motion also sought to remove Nancy as administrator based upon the conflict of interest.

{¶ 14} A hearing was held before the probate court on January 11, 2013. By entry filed three days later, the probate court ordered the farm to be sold. On February 1, 2013, the probate court found that with the exception of a portion of the loan attributable to the

---

2. On March 19, 2010, Jerry borrowed $40,000 from Credit Union of Ohio, Inc. On January 5, 2011, Jerry and Nancy together borrowed $50,000 from Credit Union.

Curves business, Nancy was an accommodation party on the Farm Credit Note and therefore, the estate, as opposed to Nancy, was liable upon the note. Specifically, the court found that because Nancy was a co-owner of the business, the debt incurred for the Curves business, which was paid off by the Farm Credit Note, "bestowed a direct benefit to Nancy," and as a result, Nancy was individually responsible for 50 percent of the portion of the debt attributable to Curves (or $52,062.15). The probate court also found that Nancy was individually responsible for one-half of the attorney fees attributable to the Curves business venture (or $661).

{¶ 15} Appellants appeal, raising two assignments of error.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT APPELLEE AS A SURVIVING SPOUSE WAS AN ACCOMMODATION MAKER ON THE NOTE AND MORTGAGE TO FARM CREDIT SERVICES OF MID-AMERICA WHEN SHE AND JERRY N. HOPPES BORROWED $686,000.00 ON 27 MAY 2009.

{¶ 18} Appellants challenge the probate court's determination that with the exception of a portion of the loan attributable to the Curves business, Nancy is otherwise an accommodation party to the $686,000 Farm Credit Note. Appellants summarily assert that Nancy "received over $300,000.00 direct benefit" because the note paid off "[Nancy's] obligation to American Express Co., Time Share Purchase, luxury autos, and other debts." Appellants do not specify what the "luxury autos and other debts" are.

{¶ 19} As stated earlier, the Farm Credit Note was signed by both Jerry and Nancy. A signature in the lower right-hand corner of an instrument indicates an intent to sign as the maker of the note. *Grossi v. Fifth Third Bank*, 12th Dist. Butler No. CA93-06-126, 1994 WL 117766, *2 (Mar. 28, 1994). Nancy's signature is located in the lower right-hand corner of the Farm Credit Note. She is therefore a co-maker of the note. However, simply because a

party signs a note as a maker does not preclude that party from being also an accommodation party to that note. *Id.* at *3.

{¶ 20} An accommodation party is one who signs a note merely to lend his or her name to another party to it. *Dick v. Perkins*, 6th Dist. Wood No. 93WD111, 1994 WL 530846, *2 (Sept. 30, 1994). Whether an individual is an accommodation party is a question of fact. *In re Baker and Getty Fin. Servs., Inc.*, 974 F.2d 712, 717 (6th Cir.1992); *Huron Cty. Banking Co., N.A. v. Knallay*, 22 Ohio App.3d 110, 114 (6th Dist.1984). Factors which determine whether a co-maker is an accommodation party include "[1] the location of the party's signature, [2] the language of the note, [3] whether the party claiming accommodation status received any proceeds or benefit from the loan, [4] the parties' intent, and [5] whether the signature of the party claiming accommodation status was needed to get the loan." *Dick* at *2. The person claiming to be an accommodation party has the burden of proving it. *Darrah v. Leakas*, 10th Dist. Franklin No. 93AP-952, 1994 WL 21861, *3 (Jan. 27, 1994).

{¶ 21} Upon reviewing the record, we find that the probate court erred in finding that the only direct benefit conferred upon Nancy by the Farm Credit Note was the payment of the Curves business debt.

{¶ 22} As stated above, Nancy's signature is located on the lower right-hand corner of the note. Both Jerry and Nancy are referred to as borrowers in the note. No other words were added to qualify Nancy's signature. The note does not designate Nancy as an accommodation party. With regard to the parties' intent, only Nancy testified about the issue. Nancy testified she signed the note because she was Jerry's wife and he asked her to do so. Nancy also testified she did not participate in negotiating, and was not involved in any discussion regarding the terms and conditions of the note. Nancy further testified that in light of a CREP program, it was her understanding "Jerry did not believe [she] would be

responsible for paying that loan."[3] The probate court found, and we agree, that given Nancy's limited income, her income (or her signature) was not needed to qualify for any of the loans taken out by both Jerry and Nancy, including the Farm Credit Note.

{¶ 23} We next address whether Nancy received any proceeds or direct benefits from the loan, other than the benefit related to the Curves business. Pursuant to R.C. 1303.59, which governs instruments signed for accommodation, an accommodation party "is a person who signs an instrument to benefit the accommodated party * * *, and who is not a direct beneficiary of the value obtained." Paragraph one of the Official Comment to R.C. 1303.59. "[A] party who receives proceeds or otherwise directly benefits from an instrument is generally not an accommodation party." *Dick*, 1994 WL 530846 at *2.

{¶ 24} The proceeds of the Farm Credit Note were used in part to pay the balance of the Merchants '07 Note (which was signed by both Jerry and Nancy). The proceeds of the Merchants '07 Note were used in part to pay a Marriott Vacation Club time share ($18,397.57). Nancy testified that she and Jerry initially co-owned the time share but that ownership was subsequently transferred to her and that she was now the sole owner of the time share. Nancy also testified that when she signed the Merchants '07 Note, she "intended to obligate [herself] as an individual to pay [that] debt."

{¶ 25} Given the foregoing evidence, we find that the probate court erred in not allocating to Nancy a portion of the $686,000 loan attributable to the payment of the Marriott Vacation Club time share. It is clear that with regard to the time share, Nancy directly benefited from the proceeds of the Farm Credit Note. *See In re Estate of Wray*, 842 S.W.2d 211 (Mo.App.1992) (surviving spouse was, along with decedent, co-maker of notes and not

---

3. Between 2006 and 2008, appellants and Jerry entered into contracts under which they designated certain farm acreage into the Conservation Reserve Program (CREP) in exchange for substantial annual payments. The CREP program is administered by the Department of Agriculture. Nancy testified that the Farm Credit Note was secured by both the farm and the CREP program.

an accommodation party, where surviving spouse directly benefited from the proceeds of the notes since she had possession and use of the property for which the notes were given). Because Nancy was a co-owner of the time share and is now its sole owner, the debt incurred for the time share, which was paid off by the Farm Credit Note, bestowed a direct benefit to Nancy. This is no different than when Nancy directly benefited from the proceeds of the Farm Credit Note with regard to the Curves business.

{¶ 26} Appellants also argue that Nancy directly benefited from the Farm Credit Note with regard to the American Express credit card.

{¶ 27} As stated earlier, during their marriage, Jerry and Nancy primarily charged their living expenses on an American Express credit card which was solely in Jerry's name with Nancy as an authorized user. This was done to maximize the earning of rewards points on the American Express account. Substantial sums were charged on this account by both Jerry and Nancy. Proceeds from the Farm Credit Note were used in part to pay the American Express credit card ($36,387.58). Proceeds of the Farm Credit Note were also used to pay the balance of the Merchants '07 Note which proceeds had been used in part to pay the American Express credit card ($29,556.51).

{¶ 28} Nancy testified the parties used the American Express credit card for all of their household expenses and home improvements, as well as for vacation, eating out, clothing and skin care products, and some items for her family. Both spent substantial amounts on the credit card. Nancy admitted that as a result, they lived a nice life. Nancy also admitted that "to a certain extent," she benefited from using the credit card.

{¶ 29} In *Dick*, Douglas Perkins and Nancy Dick lived together for several years. *Dick*, 1994 WL 530846. During that time, Perkins used Dick's credit cards. At some point, the parties obtained a debt consolidation loan, which was secured by a mortgage on Dick's house. The loan, which was signed by both parties, was used to pay off debts, including

credit card debts of both parties. On appeal, Perkins challenged the trial court's decision he was a co-maker on the note, rather than an accommodation party. The Sixth Appellate District upheld the trial court's decision on the ground, inter alia, that: "the record shows that [Perkins] directly benefitted from the mortgage proceeds. The parties used the loan proceeds to: pay credit card debts partially attributable to [Perkins][.]" *Id.* at \*2.

{¶ 30} In the case at bar, Nancy certainly enjoyed a benefit from her permissive use of Jerry's American Express credit card. The question before us, however, is not whether Nancy benefited from the American Express credit card purchases, but rather, whether she benefited from the payment of the American Express account with the proceeds of the Farm Credit Note, and, if so, whether that benefit was direct or indirect. A crucial factor in determining if Nancy directly benefited from the payment of the American Express account is that only Jerry was legally liable for the American Express credit card charges. Use of the loan proceeds to pay the American Express account extinguished Jerry's legal liability for the charges and extinguished no legal liability of Nancy. Based upon the foregoing, we find that the application of the loan proceeds to pay the American Express account was, at most, an indirect benefit to Nancy. We decline to adopt the reasoning set forth in *Dick* to the extent that it holds otherwise. The probate court, therefore, did not err in not allocating to Nancy a portion of the $686,000 loan attributable to the payment of the American Express credit card debt.

{¶ 31} Appellants' first assignment of error is accordingly overruled in part and sustained in part. The case is remanded for the probate court to allocate to Nancy a portion of the $686,000 loan attributable to the payment of the Marriott Vacation Club time share.

{¶ 32} Assignment of Error No. 2:

{¶ 33} THE COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO MAKE A RULING ON THE APPELLANTS' MOTION TO REMOVE APPELLEE AS ADMINISTRATOR

OF THE ESTATE OF HER LATE HUSBAND BY VIRTUE OF A CONFLICT OF INTEREST SUCH AMOUNTING TO AN ABUSE OF DISCRETION.

{¶ 34} Appellants argue that in light of the "palpable" conflict of interest based on Nancy's assertion she was an accommodation party to the Farm Credit Note, the probate court abused its discretion in failing to (1) rule on their motion to remove Nancy as administrator, and (2) conduct an evidentiary hearing on the motion.

{¶ 35} The record shows that appellants' answer to Nancy's complaint to sell the farm, filed in July 2012, sought to remove Nancy as administrator of the estate. Subsequently, by motion filed on January 10, 2013, appellants once again sought to remove Nancy as administrator based upon the conflict of interest. At the hearing held before the probate court the following day, no evidence was presented specifically on the issue of conflict of interest.[4] At the close of the hearing, Nancy in her capacity as administrator, moved for a directed verdict. Appellants, in turn, moved for a directed verdict based upon the conflict of interest. The probate court never ruled on these motions. Likewise, the court never ruled on appellants' motion to remove Nancy as administrator.

{¶ 36} R.C. 2109.24 and 2113.18 provide the statutory basis for removing a fiduciary or executor. The administrator of a decedent's estate is a fiduciary. *In re Estate of Phelps*, 7th Dist. Jefferson No. 05 JE 19, 2006-Ohio-890, ¶ 13; R.C. 2109.01. The removal of a fiduciary pursuant to these statutory provisions is within the sound discretion of the probate court and an appellate court will not reverse that decision absent an abuse of that discretion. *In re Estate of Russolillo*, 69 Ohio App.3d 448, 450 (10th Dist.1990).

{¶ 37} Generally, when a trial court fails to rule on a motion, the appellate court will

---

4. The transcript of the January 11, 2103 hearing shows that the issue regarding Nancy's conflict of interest was only sporadically and indirectly discussed when Nancy was questioned about her assertion she was an accommodation party.

presume that the trial court overruled the motion. *Wells Fargo v. Smith*, 12th Dist. Brown No. CA2012-04-006, 2013-Ohio-855, ¶ 14. However, "this presumption only applies to pending motions which are not ruled upon when a court disposes of a case." *Cherol v. Sieben Invests.*, 7th Dist. Mahoning No. 05 MA 112, 2006-Ohio-7048, ¶ 18; *Shepard Grain Co. v. Creager*, 160 Ohio App.3d 377, 2005-Ohio-1717 (2d Dist.).

{¶ 38} We will not presume that the probate court overruled appellants' motion to remove Nancy as administrator simply because the court has not yet ruled on that motion. *Cherol* at *id.* However, the removal of Nancy as administrator is a matter to be determined within the context of Jerry's estate as opposed to the trial of a civil action to determine if the estate's real property must be sold to pay the estate's financial obligations. Although the land sale proceeding is terminated, Jerry's estate is ongoing as it has not been fully administered and is thus still open. Therefore, the probate court retains its jurisdiction and the opportunity to rule on appellants' motion to remove Nancy as administrator. As such, there is no final appealable order with regard to the pending motion to remove Nancy as administrator and this court is without jurisdiction to address the issue further. *See, e.g., In re Estate of Sneed*, 6th Dist. Lucas No. L-06-1054, 2006-Ohio-1868 (a probate court's *ruling* on a motion to remove the administrator or executor of an estate is a final appealable order).

{¶ 39} Appellants' second assignment of error is overruled.

{¶ 40} Judgment affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

RINGLAND, P.J., and PIPER, J., concur.