**Jackie J. VANGUNDY, Appellant,**

v.

**Gordon VANGUNDY, Respondent.**

**No. WD 51691.**

Missouri Court of Appeals,
Western District.

Nov. 5, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 24, 1996.

Application to Transfer Denied
Feb. 25, 1997.

Anita I. Rodarte, Kansas City, for appellant.

Craig D. Ritchie, St. Joseph, for respondent.

Before ULRICH, P.J., and
BRECKENRIDGE and HANNA, JJ.

ULRICH, Judge.

The Appellant, Jackie Vangundy (Jackie) appeals a judgment modifying a Decree of Dissolution entered in 1993. The judgment modified the legal and physical custody plan concerning the parties' two minor children, Paige and Kelcy. The Dissolution Decree originally awarded joint custody of the two girls to Jackie, mother, and Respondent (Gordon), father, in this manner: Jackie had physical custody of the children five days with Gordon having custody the remaining two days of the week. The Custody Plan provided for a specific sharing of major holidays and allowed both Jackie and Gordon two consecutive weeks with the girls each summer. The Custody Plan also directed Gordon and Jackie to share in decision-making responsibilities affecting Paige and Kelcy but provided that if they were unable to agree, Jackie possessed an additional "tie-breaker" vote enabling her to make the final decision. She claims that (1) the trial court lacked authority to change the "legal custody" of the girls because Gordon did not request the change in his pleadings, and (2) insufficient evidence was presented to support the trial court's order. The judgment of the trial court is affirmed.

## BACKGROUND

At the time the Decree was entered into, both parties resided in the Rock Port/Tarkio, Missouri area. Prior to the Dissolution Decree, Jackie had applied for a training program connected with her ten-year employment at the Farm Service Agency in Atchison County. The program was a prerequisite to qualify for the position of County Executive Director for FSA and would require Jackie to temporarily work in different

offices throughout the state of Missouri[1]. Shortly after the Dissolution Decree was entered, Jackie notified Gordon that she had been accepted into the training program. Initially expecting the training to last no longer than seven months, Jackie asked Gordon to allow the girls to reside with him until she finished the training. In early October 1993, Gordon took the girls into his home. Because a permanent position was not available for Jackie at the end of the seven-month period, she continued in the program awaiting an opening[2].

Gordon had five other children from a previous marriage. Only one child, a thirteen year old son, lived in the home. During the time the girls resided with Gordon, he had three different girlfriends, each of whom had children of various ages who lived in the home when their mother did. While one periodically stayed overnight, the remaining two apparently resided in the home during their respective tenures as Gordon's girlfriend. Gordon received help with the parties' daughters from his mother, his other daughters, and his girlfriends[3].

In December of 1994, fifteen months after initially beginning the FSA training program, Jackie was offered an FSA Executive Director's position in Jackson County, Blue Springs, at a $3,000 annual salary increase. Three months later, Jackie purchased a home in Oak Grove and made arrangements for the girls to reside with her in mid-March 1995. Gordon objected to the mid-school-year move, however, and suggested that Jackie wait until the end of the school year. Jackie subsequently brought Paige and Kelcy home with her on March 15, 1995.

In early April 1995, Jackie filed a Motion to Modify the Decree of Dissolution[4]. At the modification hearing, both Gordon and Jackie requested that the court award them primary physical custody with the other parent receiving visitation rights in the summer along with alternating holidays and weekends. On September 12, 1995, the trial court entered his order modifying custody. Primary physical custody of the girls was alternated between Gordon and Jackie. Jackie was to exercise physical custody on alternate weekends and holidays and nine weeks in the summer while Gordon would have custody at all other times. The joint legal custody arrangement continued unchanged except that Jackie was required to give to Gordon the "tie-breaker" voting authority. Jackie was also ordered to pay child support of $433 per month to abate in the months of June and July when she would have physical custody of the girls.

## STANDARD OF REVIEW

Appellate review is governed by Rule 73.01(c) as interpreted in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will not be disturbed unless there is no substantial evidence to support it, it is against the weight of

1. Jackie neither notified Gordon nor the Court that she had applied for the training prior to the Dissolution proceeding.

2. Jackie and Gordon dispute the exact number of days the girls resided with Gordon throughout the 18–month period. Jackie testified she had the girls three weeks while Gordon had them 20 weeks and the remaining nine weeks were divided by Gordon having the girls throughout the weekdays while Jackie had weekends. Gordon testified that other than the three weeks with Jackie, the girls resided with him.

3. One of the girls also suffered from a condition which caused her urethra to grow closed on occasions which consequently prevented her from urinating. Three surgeries were performed and she required a daily application of medication to the affected area. Gordon relied on his older daughters and girlfriends to treat the condition.

4. Jackie alleged in her motion to modify:

   [T]here have been changes in the circumstances of petitioner [Jackie] and the minor children that are so substantial and continuing that it is to the best interests of the minor children to have this Court modify its previous orders as they touch upon the care, custody, control, visitation, and support of said minor children.... (1) Petitioner has changed her residence from Rock Port, Missouri to Oak Grove, Missouri. Said change in residence is job-related. Said change in residence renders the visitation schedule as set out in said decree unduly burdensome on the minor children. (2) The incomes of petitioner and respondent have increased significantly.

   On appeal she repudiates those contentions stating that any "changed circumstances" were not significant or continuous.

the evidence, or it erroneously declares or applies the law. *Id.* at 32. Deference is given to the trial court's determinations of credibility, and the evidence and permissible inferences drawn therefrom are reviewed in the light most favorable to the decree disregarding all contrary evidence and inferences. *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo. banc 1991). The party challenging the decree bears the burden to demonstrate trial court error. *Calia v. Calia,* 624 S.W.2d 870, 872 (Mo.App.1981). Power to set aside the decree is exercised with caution and only if there is a firm belief that the decree is wrong. *Murphy,* 536 S.W.2d at 32.

## ISSUES ON APPEAL

### I. The Trial Court's Authority in Custody Proceedings

■ Jackie Vangundy claims the trial court exceeded its jurisdiction in modifying the terms of the joint legal custody plan with respect to Jackie's decision-making authority.[5] She argues that neither party requested modification of the "legal custody" of the minor children from Jackie to Gordon.

■ Courts have power to decide only such questions as are presented by the parties in their pleadings. *Hembree–Shanaberger v. Shanaberger,* 903 S.W.2d 202, 205 (Mo.App.1995); *Carl v. Carl,* 284 S.W.2d 41, 44 (Mo.App.1955). Section 452.375 subdivides "custody" into "legal custody" which concerns the decision-making rights, responsibilities, and authority relating to the health, education, and welfare of the child and "physical custody" which concerns with whom the child will reside to receive care and supervision. Although no express request for modification of the legal custody of the children was presented to the trial court, a request for modification of custody— whether legal or physical—invokes the inherent authority of the court to adjudicate the custody of the children as the court deems will best serve the interests of the children:

> When a child is properly before any court for any purpose and its welfare is involved,

it becomes a ward of that court with respect to the issues of that case and that court has inherent jurisdiction to adjudicate custody as it deems will best preserve and protect the child's welfare. This is the public policy of the state.

*State ex rel. Catholic Charities of St. Louis v. Hoester,* 494 S.W.2d 70, 73 (Mo. banc 1973) (citing *State ex rel. Stone v. Ferriss,* 369 S.W.2d 244, 249 (Mo. banc 1963)); *S.H. v. O.M.H.,* 796 S.W.2d 71, 72 (Mo.App.1990). This is so because the welfare of the child is the primary concern of the court. *Hoester,* 494 S.W.2d at 73; *R.W.H. v. D.M.H.,* 898 S.W.2d 144, 147 (Mo.App.1995). A child custody proceeding is, therefore, unlike most litigation where the judge is a neutral arbiter. *R.W.H.,* 898 S.W.2d at 147. A court has an affirmative duty to determine the best interests of the child and greater responsibility is given to that court than only according the parties a fair trial. *Wenger v. Wenger,* 876 S.W.2d 735, 743 (Mo.App.1994).

■ The welfare of a child is always at issue when a child is brought under the jurisdiction of the court in matters of custody. Under section 452.410, a court must make a legal conclusion as to the best interests of the child.

> While the parties may both agree, or admit in their pleadings, that certain changed circumstances exist, and while they may even agree or admit that such changes justify a modification to serve the best interests of the child, such admissions do not compel the trial court to make the required conclusion of law.

*M.F.M. v. J.O.M.,* 889 S.W.2d 944, 956 (Mo. App.1995). Merely because the parties in the present case did not contest the issue of "legal custody" does not preclude the trial court from considering the best interests of the children. As with stipulations, where parties prior to trial refine their disagreements by agreeing to certain facts, a court must act upon the evidence presented from which it may determine that a change in custody is in the best interests of the chil-

---

5. Section 452.410 provides in pertinent part: "... the court shall not modify a prior custody decree unless it has jurisdiction under ... section 452.450 and it finds ... that a change has

occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

dren. *Id.* (citing *Riley v. Riley,* 643 S.W.2d 298, 300 (Mo.App.1982)); *State ex rel. Perrella v. McGuire,* 757 S.W.2d 223, 225 (Mo.App. 1988). A stipulation by the parties can not constrain the court's responsibility nor can the pleadings.

■ Courts are afforded great latitude in this ever-growing Solomon-like role of "dividing" the child between what are usually former spouses inextricably bound together as "mother" and "father" by one remaining link—their children. Having once invoked the jurisdiction of the courts into their children's lives through the dissolution of the marriage, the Vangundys have integrated judicial oversight into normally private decisions until these girls reach their majority. A decision that would place physical custody of the children in their father, while at the same time assigning the tie-breaking authority regarding health, education, and welfare matters to their mother who lives a significant distance from the girls' residence, would likely exacerbate any existing conflicts and produce greater instability for the children. When the issue of custody, whether "legal" or "physical," is brought before a court either by way of an initial dissolution proceeding or modification proceeding, irrespective of the parties' positions before the court, what custody plan is in the best interest of the child is ultimately the court's determination.

Although neither party pleaded for the specific modification of the "tie-breaker" power in Jackie to Gordon, the initial Motion to Modify Decree of Dissolution of Marriage filed on Jackie's behalf put the issue of "legal custody" before the court. Jackie premised her Motion on the allegation that changes had occurred that "touch upon the care, custody, control, visitation, and support of said minor children." She further asked that the modification be granted "as to joint custody of the minor children, awarding joint legal custody of the minor children to petitioner and respondent...." While Gordon asked only for modification of physical custody in his Counter–Motion to. Modify, Jackie raised the issue initially in her Motion to Modify,

and that is sufficient to place the issue of legal custody of the minor children before the trial court. The trial court did not exceed its authority in modifying the legal custody of Kelcy and Paige. Point I of the Appellant is denied.

## II. Sufficiency of the Evidence

■ Jackie's remaining contention is that no substantial evidence to support the trial court's decision was presented, the decision was contrary to the weight of the evidence, and the court erroneously applied the law in arriving at the decision. Evidence that was available to the trial court included:

1. The girls resided with Gordon throughout an eighteen month period following. the Dissolution Decree because of Jackie's participation in her employer's qualifying training program for promotion to County FSA Executive Director;

2. Jackie's employment in Jackson County, Blue Springs;

3. Jackie's taking up residence in Oak Grove, which is 147 miles from Gordon's home in Tarkio.

4. Jackie's use of paid day-care during the school week.

■ The existing custody plan regarding the weekday custody was unworkable.[6] When the status quo of a custody plan significantly and directly affects the welfare of the child—no longer serves the best interests of the child—the question becomes not whether a change should occur but to what extent. *Alt v. Alt,* 896 S.W.2d 519 (Mo.App.1995).

The original custody plan was designed to accommodate Gordon and Jackie's close proximity in the Tarkio/Rock Port area. The record reflects that the children had become established in their school and community. Granted our modern society has become much more mobile and opportunities for promotion are not guaranteed, Jackie recognized that to require the girls to live a transitory lifestyle in temporary housing at various lo-

---

6. The "mid-week" custody was as follows: Gordon was to have the children Wednesday through Friday one week and Thursday through Saturday the following week. Appellants admit that

"[s]uch plans are destined to require adjustment and modification, particularly where the parties move on with their lives and careers after dissolution."

cations was not beneficial to them. The girls did well living in one place. The trial court recognized that Kelcy and Paige developed roots in the present social, educational, and home environment and crafted a plan to keep Paige and Kelcy in the same geographic area to facilitate their growth and stability.[7] Gordon and Jackie both agreed that Kelcy and Paige needed to be with the natural parents as much as possible and that it was in the best interest of the children that the court fashion a custody plan which maximized the amount of contact the children had with each of their parents. Substantial evidence existed by which the trial court could determine that the custody and support plan of Jackie and Gordon's Dissolution Decree required the modification effected. Appellant's point is denied.

The judgment of the trial court is affirmed.

All concur.

---

7. Section 452.375.2 RSMo lists a variety of factors in determining the best interests of the child including "[t]he interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests" and "[t]he child's adjustment to his home, school, and community."