**Kenneth D. ALCORN, Respondent,**

v.

**Susan E. Alcorn CLARK, Appellant.**

**No. 23555.**

Missouri Court of Appeals,
Southern District,
Division One.

April 19, 2001.

Motion for Rehearing or to Transfer to Supreme Court Denied May 7, 2001.

David L. Colson, Farmington, for Appellant.

No appearance for respondent.

PARRISH, Presiding Judge.

Susan E. Clark, formerly Susan E. Alcorn, (mother) appeals a judgment modifying child custody provisions of a dissolution of marriage judgment. The trial court modified the dissolution judgment by awarding Kenneth D. Alcorn (father) primary physical and legal custody of the parties minor child, Jacob David Alcorn (Jacob), and granting mother visitation with the child on specified occasions.[1] This court reverses and remands for a new trial.

The marriage of the parties was dissolved by judgment entered March 17, 1997. The parties were awarded joint legal custody of Jacob, born May 16, 1991. Mother was granted primary physical custody of Jacob. The dissolution judgment granted father visitation at designated times and provided for additional visitations to "be arranged between the parties with the best interest of the child being their goal."

Father filed the motion for modification that is the subject of this appeal. He requested the trial court to award him primary physical custody of Jacob; that an order be entered directing the child support he had been ordered to pay be eliminated and an order entered for mother to pay child support. Father also sought payment of his attorney fees.

The trial court found "substantial and continuing changes in circumstances of the minor child, Jacob David Alcorn, so sufficient as to justify a change in custody . . . to [father]." Those circumstances were identified as:

1. Father filed no brief in this appeal. He did file a motion to dismiss the appeal. Father was granted time in which to file suggestions in support of that motion to include citations to appropriate authority. He was admonished that if suggestions were not filed the motion would be taken with the case. Father filed no suggestions. The court, having considered the motion to dismiss, denies that motion.

(a) [Mother] has attempted to home school the minor child rather than enroll him in public school for the past two years.

(b) Testing by both the Arcadia Valley Schools and Betty L. Bequette, a psycho-educational consultant from Park Hills, Missouri, demonstrate that the minor child is approximately one year behind other children his age.

(c) [Mother] married Michael Timothy Clark and moved with the child into Mr. Clark's household in Park Hills, Missouri.

(d) [Mother] has become unemployed and has no visible means of supporting the minor child.

(e) Pursuant to [s]ection 452.375(2)(3), R.S.Mo., [sic][2] the interaction and the relationship of the minor child, Jacob David Alcorn, with the step-father, Michael Timothy Clark, may significantly affect the child's best interest.

Mother presents two points on appeal. Point II is determinative. It argues the trial court erred in considering medical records of Michael T. Clark for purposes of granting change of custody of Jacob. Point II asserts the medical records were not made available to counsel for either of the parties to the case; that there was no opportunity to refute, impeach or explain the records.

This case was tried July 26, 1999. Mother was married to Michael T. Clark. They had been married since May 31 of that year. Mother and Jacob had resided at his home in Park Hills, Missouri, since the marriage. Father called Mr. Clark as a witness. Mr. Clark testified about his employment and prior marriages. He was asked about a history of alcohol-related traffic offenses that occurred between 1980 and 1990.

After the inquiry concerning alcohol-related offenses, Mr. Clark was asked if he had convictions for anything other than alcohol offenses. He answered, "Do I need to answer that? Am I required to answer that?" Father's attorney stated, "You're under oath, I think you have to answer." An objection was posed by mother's attorney that the question was not relevant or material to issues. Mr. Clark added, "It might effect [sic] my job."

The trial court asked Mr. Clark if he wished time to consult an attorney; that he had a right under the Fifth Amendment of the United States Constitution to decline to answer questions. Mr. Clark asked for time to consult an attorney. The trial court then moved to a closed hearing at which the guardian ad litem, father's attorney, mother's attorney and Mr. Clark were present.

Father's attorney advised the trial court that he had a pending application for an order to disclose certain patient medical records of Mr. Clark. The attorney stated:

> I don't believe Mr. Clark is going to voluntarily give us this information that I think the court needs to know. I believe that there is some history of some violent behavior toward some household people as well as the alcohol problem which I believe he has already discussed on the witness stand. I be-

2. This court notes that no provision of § 452.375, RSMo Cum. Sup. 1999, conforms to this citation and infers that the provision of *the statute intended to be cited was* § 452.375.2(3) that provides:

The court shall determine custody in accordance with the best interests of the child.

The court shall consider all relevant factors including:

. . .

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests; . . . .

lieve that the court needs to know those things to be able to evaluate them and make a decision with regard to what's in Jacob's best interest, or for physical placement.

The trial judge then stated that Jacob was eight years old; that the original dissolution judgment was entered March 13, 1997.[3] He stated that Jacob was with his mother; that mother and father had joint legal custody. He acknowledged that Mr. Clark indicated during the earlier part of the trial that he and mother were married; that the marriage had occurred "sometime this year." Mr. Clark responded, "Yes sir, May 31st."

The trial judge inquired whether the parties were finished with Mr. Clark as a witness. The guardian ad litem asked if Mr. Clark would testify if he were to retake the stand. He stated he assumed Mr. Clark "would decline to testify as to his rights" and inquired if that was a fair statement. Mr. Clark answered, "Yes, yes."

The trial judge addressed Mr. Clark, advising him that the guardian ad litem had not had an opportunity to cross-examine him. The guardian ad litem was asked if he desired to cross-examine. The guardian inquired of Mr. Clark, "Is it your intention, if you were to be recalled to take the witness stand, to go ahead and take the 5th Amendment and decline to answer further questions from any attorney in this case?" Mr. Clark answered, "Yes sir. That's what my wishes are."

The guardian ad litem moved to strike Mr. Clark's direct examination. The mo-

tion was granted. Mr. Clark was excused. The trial court then addressed the matter of Mr. Clark's medical records.

An application filed on behalf of father sought medical records of Michael Timothy Clark. It alleged that Mr. Clark had received treatment at "the Mineral Area Program at Mineral Area Regional Medical Center in Farmington, Missouri." A subpoena duces tecum was served on that agency for production of Mr. Clark's medical records.

Father's attorney called Regina Hulsey as a witness with respect to Mr. Clark's medical records. She was identified as the custodian of those records. After identifying the parties who were present, the judge told Ms. Hulsey he was "reading this Title 42."[4] The following colloquy occurred:

The Court: Now with that out of the way, I'm reading this Title 42, I want you to read along with me so you won't get confused, ["]may include an examination of [sic] the judge by [sic] the patient's records referred to in the application["] which I consider to be a subpoena. What I'd like to do, without the attorneys being present and without Mr. Clark being present, I will, if you want a written order, do you want a written order?

Regina Hulsey: Yes please.

. . .

The Court: At this time the court has signed an order to disclose patient records. Ms. Regina Hulsey who is the custodian of records has the records in

---

**3.** The date beside the trial judge's signature on the dissolution judgment is March 13, 1997. The judgment was filed March 17, 1997.

**4.** Apparently the reference to "Title 42" was to a section of the Code of Federal Regula-

tions. A copy of 42 CFR 2.64 was attached to a motion to quash the subpoena duces tecum for Mr. Clark's medical records filed on behalf of the treatment facility. What was read appears to track language of that regulation.

her possession. The court has signed an order, on page three, the records may be disclosed to the following individuals only: as a supplemental court order and that's to Mr. Keith Sorrell, the GAL in this case and no one else and I've asked that he sit with the custodian of records here in the jury room and go over these records so that the records may be returned completely to the custodian of records as soon as he finishes. The court is going to excuse the other attorneys to go to lunch and we will do this at this time.

After a recess the following occurred:

The Court: We're back on record. We're still back in chambers. During about the last hour and twenty mintues [sic], the guardian ad litem, pursuant to an order signed by the court has gone through all of these files. As you two gentlemen can see, and for the record, the only people back here now is [sic] the attorney for [mother] and attorney for [father], guardian ad litem and Mrs. Hulsey, the custodian of records. He has several yellow stickers that he's put on. I have not looked at any of the medical reports. But he's looked at those and they are of concern to him. And I believe Mr. Sorrell you indicated you wanted to use these records when [mother] took the stand, is that correct?

Mr. Sorrell: Yes sir.

A lengthy discussion then occurred between the trial judge, the parties' attorneys and the guardian ad litem. The judge asked the attorneys their "position" concerning whether the guardian ad litem would be permitted to use the information he learned from Mr. Clark's medical records to question mother. Father's attorney stated the opinion that it should be allowed. After discussing the use the guardian ad litem anticipated making of the records, mother's attorney questioned

the procedure that was being considered. He said he did not fully understand what was being proposed. He asked if the court was "looking for a consent." The judge responded, "Not necessarily." Mother's attorney asked if what was being sought was consent for the guardian ad litem to use the records to examine mother. He emphasized that the other attorneys had not seen the records; that they did not know what the records contained.

The guardian ad litem clarified that he desired to use information he obtained from the medical records to ask questions, but that he "would not offer the records." The guardian ad litem added that he thought he was "stuck with whatever her answer is because these are not her records of course." He suggested, "[I]t does make a difference as to what she knows and if I make an eventual recommendation at the close of this case." Mother's attorney responded that he did not "see any problem with that." The parties agreed that the judge should "clear the courtroom" when mother testified.

The trial court reconvened in the courtroom. Mother's attorney was permitted to call a witness out of turn. Father then continued with his case-in-chief, calling mother as his final witness. She told the trial court she was not employed but testified about prior employment. She testified about the relationship she maintained with father after the dissolution of their marriage and about conflicts that had occurred.

Mother told the trial court she had been home schooling Jacob, but that he had been enrolled in the second grade in public school for the coming year. Mother explained that the reasons she had home schooled Jacob the preceding two years included his allergies and that he was *dia*betic; that special dietary needs had not been met when he attended public school.

She said Jacob had been diagnosed with a severe allergy to milk and diabetes but that his diabetes was "under control."

The guardian ad litem inquired about Mr. Clark during his cross-examination of mother. She testified that Mr. Clark had two children from prior marriages; that his six-year old daughter, Stacia, lived with them. She was asked about Mr. Clark's past and whether she had asked him about it. She said she had. Mother was then asked what Mr. Clark told her about his relationship with his father. She was reluctant to answer. She was concerned about Mr. Clark's privacy; that it "could hurt his job." After being told the questions were necessary, she answered.

Mother said Mr. Clark told her his father had abused him in the past. He told her this before their marriage. She was asked if she had been told when the abuse ended and answered, "He told me that when he was old enough to get away he did."

Mother was asked if Mr. Clark had talked to her about his past involving alcohol. She answered that he had; that he said he could not handle what had happened to him as a child and started drinking in the army; that he was an alcoholic. Mother testified that Mr. Clark no longer drank; that she had never been around him when he had a drink of any kind. Mr. Clark told mother "that because of his father he couldn't handle that he had drank [sic] and he admitted himself for treatment for that." Mr. Clark told mother his course of treatment had been therapy; that he had been going to AA for

years. He was still attending AA meetings "every Thursday and sometimes if he doesn't work overtime he goes on Monday also."

Mother was asked if Mr. Clark told her he had thought about taking his own life. She answered that he told her he did once. She said that was the reason for his treatment. Mother was asked if she considered the things Mr. Clark told her significant insofar as her relationship with him or her son's relationship with him. She answered she did not.

At the conclusion of mother's testimony, both sides and the guardian ad litem rested. The trial court asked for "proposed judgments" from both parties. The judge asked for a conference with the attorneys "on the medical records" saying, "It's the court's intention to order those sealed and placed in a file and it cannot be opened without further order of the court." Father's attorney then told the judge he believed "it would be error for the court to make a decision without the court looking at those records." He said he based that belief on the guardian ad litem's information.[5] Father's attorney added, "I believe that the court itself is going to have to look at those records." The judge responded that he would do so.

The trial judge advised the parties what the docket entry he was making would state, including that the case was taken under advisement. He observed that the medical records had not been titled as an exhibit and added, "Medical records, GAL Exhibit A, ordered sealed by the court and placed in court file and not to be re-opened

---

5. The attorney's statement was, "I believe that it would be error for the court to make a decision without the court looking at those records, based on what the guardian ad litem has already told us about them." However, this court's review of the record on appeal reveals no reference to a statement by the guardian ad litem or any other participant in the trial that purported to reveal what the records stated, nor has a copy of those records been filed with this court or included as part of the legal file component of the record on appeal.

until further order of the court. Guardian ad litem to submit his recommendations and bill on or before August 6, 1999." The copy of docket sheets that is part of the legal file in this case includes a docket entry consistent with the trial judge's announcement. It is dated July 26, 1999.

The legal file includes a letter from the guardian ad litem with the Iron County Circuit Clerk's date-file stamp of "AUG 04 99." It is addressed to the attorneys of record and dated August 3, 1999. A copy is shown as having gone to the circuit clerk.[6] It references "Alcorn v. Alcorn." The text of the letter states:

> I have made my recommendation to Judge Price in the above-referenced case. My letter to him included all those reasons for those recommendations. I have not included that letter with this one. I have asked Judge Price to review that letter to determine if it should be made available to the other attorneys. The contents of that letter were based to a great extent on the medical records of Mr. Clark which were sealed.
>
> In any event, I have recommended that custody of Jacob Alcorn remain with his mother. I have also recommended that Jacob Alcorn not be permitted to be with Mr. Clark until such time as he undergoes evaluations for substance abuse and to determine if he has problems as a sexual perpetrator. I simply don't have the ability to make

those determinations. But I know that some professionals do. I have asked Judge Price to make any orders interlocutory until such time as these evaluations are complete or Mr. Clark declines to complete these evaluations.

> Thank you for your help in this matter.

The copy of the letter that is part of the legal file does not reflect a signature but includes the signature block "Keith D. Sorrell." [7]

The trial court's modification judgment includes as a change of circumstance that mother married Michael Timothy Clark and that "the interaction and the relationship of the minor child, Jacob David Alcorn, with the step-father, Michael Timothy Clark, may significantly affect the child's best interest." The judgment directs mother "to supervise the minor child, Jacob David Alcorn, while said minor child is in the presence of Michael Timothy Clark, and that said minor child is not to have unsupervised contact with Michael Timothy Clark."

The trial court concluded that the interaction and relationship of Jacob with Mr. Clark "may significantly affect the child's best interest" and directed mother to provide supervision for Jacob when in the presence of Mr. Clark and for Jacob to have no unsupervised contact with Mr. Clark. The modification judgment, however, includes no legal conclusion by the trial

---

6. Although the copy of the letter in the legal file bears a circuit clerk stamp stating it was "FILED," the copy of docket sheet entries that is part of the legal file does not include an entry reflecting the filing of that document. The circuit clerk's certificate of copies of documents included in the legal file, however, includes "Letter from Keith D. Sorrell dated 8/03/1999, filed 8/04/1999."

7. The circuit clerk's certification of documents included in the legal file identifies the "[l]etter from Keith D. Sorrell dated 8/03/1999, filed 8/04/1999" as "a true copy" from "the proceedings of [the] Circuit Court."

court concerning the best interests of the child. *See* § 452.410.1, RSMo 1994. *See also Vangundy v. Vangundy,* 937 S.W.2d 228, 231 (Mo.App.1996).[8]

■ The trial court found five "substantial and continuing changes in circumstances of the minor child ... *so sufficient as to justify a change in custody.*" (Emphasis added.) Two of those changes involved Mr. Clark, viz., that mother had married Mr. Clark and moved with Jacob to his residence, and that Jacob's interaction and relationship with Mr. Clark might "significantly affect the child's best interest." The inference this court gleans from its review of the record on appeal is that any conclusion in this regard must have been reached on the basis of Mr. Clark's medical records.[9]

Two of the three other changes the trial court included in its list of changes "so sufficient as to justify a change in custody" related to Jacob's education. They were that mother had attempted to home school Jacob for two years and that testing indicated Jacob was approximately one year behind other children his age. The remaining "change" the trial court listed was that mother was unemployed with no visible means of supporting Jacob.

Mindful that the evidence at trial was that mother had enrolled Jacob in public school for the coming year, the significance of the home school experience and the test results of Jacob's educational level as factors for changing custody appear, at best, minimal. Similarly, in view of the fact that there was no indication Jacob's physical

needs had been or would be neglected, mother's lack of employment was likewise insignificant as a factor for changing custody. It, therefore, appears to this court that the primary "change in circumstances" the trial court relied on in changing custody was its findings relative to mother and Jacob residing with Mr. Clark and the interaction and relationship incidental thereto.

Based on the record on appeal, the only possible source of information the trial court could have had with respect to any relationship between Jacob and Mr. Clark, or any danger a potential relationship posed, were Mr. Clark's medical records. Those records were not available to the attorneys for the respective parties. They were not admitted in evidence at trial. Rather, after all parties rested, the trial judge told father's attorney he would look at Mr. Clark's medical records. Those medical records were dehors the record in this case.

■ Factual decisions in trials must be made on evidence that withstands the scrutiny of examination by all sides to a dispute. The opportunity to discuss, dispute, refute or explain information on which a trial court will make a decision is indispensable to an adversary system of justice. In this case, the trial court denied mother the opportunity to know what was in the medical records it stated would be considered in deciding the case. That was error. Point II is well taken. It is determinative; thus, review of the remaining allegation of trial court error is not required.

---

**8.** *Vangundy* explains, "Under section 452.410, a court must make a legal conclusion as to the best interests of the child." 937 S.W.2d at 231.

**9.** This court espies no basis in the record on appeal for the trial court's conclusion that Jacob's association with Mr. Clark would be a change of circumstance that justifies a change of custody.

The modification judgment is reversed. The case is remanded for new trial.

SHRUM and MONTGOMERY, JJ., concur.