Daniel E. MCHUGH, Respondent,

v.

Elizabeth SLOMKA, Appellant.

ED 103543

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

Filed: August 8, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied
September 25, 2017.

Application for Transfer Denied
November 21, 2017

Susan M. Hais and Elliott I. Goldberger, for appellant.

Anthony M. Pezzani, for respondent.

Lisa P. Page, Judge

Elizabeth Slomka ("Wife") appeals from the modification court's judgment modifying a dissolution judgment between her and her former husband, Daniel McHugh ("Husband"). We reverse and remand in part and affirm in part, with instructions.

## BACKGROUND

Husband and Wife were married in Marion County, Indiana in May 1989. During the majority of their marriage Wife was not employed outside the home, and was the primary caregiver of the parties' three minor children (ages 15, 15, and 13 at the time the "Modification Judgment" was entered). For twenty years of their marriage, Husband was employed in various positions by the same large corporation in both Chicago and St. Louis. Eventually, he was promoted to Vice-President of Entertainment Marketing, earning approximately $250,000 per year as a base salary, plus annual bonuses of between $37,500 and $62,500. In 2009, Husband's employment was terminated due to an affair with a co-worker ("Paramour").

In May 2010, Husband filed a Petition for Dissolution of Marriage in the Circuit Court of the City of St. Louis. Pursuant to a settlement agreement, a Dissolution Decree was entered in February 2011, dissolving the parties' marriage. The Dissolution Decree incorporated a Marital Separation Agreement ("MSA") and a Parenting Plan (collectively, the "Dissolution Judgment").

The Dissolution Judgment awarded sole physical custody of the children to Wife. The parties were awarded joint legal custody, however Wife was granted the authority to make final decisions in the event of a disagreement. Husband was ordered to pay Wife the sum of $1,300 per month in child support for three children.[1] Each party was ordered to satisfy their own attorney's fees.

The specific terms of the MSA ordered the 5500 square-foot marital-home be sold. Additionally, the MSA addressed maintenance as follows:

a. Terms of Payment and Duration. It is reasonable for and [Husband] shall pay to [Wife] the sum of $2,000 per month as and for modifiable maintenance . . . .

* * *

b. The parties understand that they are unable to maintain the standard of living during the marriage because [Husband] is unemployed. The parties understand that this amount is modifiable once [Husband] becomes employed . . . .

The parties agreed in the Parenting Plan that Husband would reimburse Wife for: (1) 60% of the children's unreimbursed medical expenses, (2) 50% of the children's educational and extraordinary expenses "incurred by agreement in writing by the parties," and (3) 50% of the private school cost for their youngest daughter, up to $2,000 per year. In regard to extraordi-

---

1. The Form 14 child support calculation imputed no income to Wife and $103,800 to Husband annually.

nary expenses, the MSA stated that "in the event the parties do not agree on the expense, the parent enrolling the children in the activity shall be responsible for 100% of the expense."

In June 2011, Husband accepted employment with a company in Pittsburgh, earning approximately $185,000 per year. Thereafter, in March 2012, Husband accepted employment with a different company located in California. Accordingly, Husband and Paramour (to whom he is now married) moved to Venice Beach, where Husband's annual salary is $307,000 per year; Husband also received a $100,000 bonus in 2013. Together, Husband and Paramour enjoy a lucrative household income of approximately $550,000 per year.

Conversely, in August 2011, Wife and the three children moved to Indianapolis, Indiana to reside with her parents. Wife testified that the impetus for her move and co-habitation with her parents (both of whom are in their mid-seventies) was out of "necessity," because the marital home was sold and Wife did not have family residing in the St. Louis area. Wife testified that their residency with her parents was intended to be "temporary." Wife also testified that she has pursued employment opportunities in Indianapolis; however, Wife has only been able to secure one part-time position for eight months, at $13 per hour. Since the dissolution, Wife has continued in her role as the primary caregiver of the parties' three children.

In October 2012, Wife filed a motion to modify the Dissolution Judgment, seeking an increase in maintenance and child support, reimbursement of medical, educational, and extraordinary expenses, and attorney's fees. Husband filed a counter-motion to modify, seeking a reduction in maintenance, as well as, a revision of the joint legal custody provision.

On June 2, 2015, after a two day trial, the court entered a Modification Judg-ment, decreasing Husband's maintenance to $1,000 per month and increasing child support to $3,169 per month for three children. The court denied Wife's requests for expenses and attorney's fees, and removed Wife's authority to make final decisions for the children.

This appeal follows.

## DISCUSSION

Wife submits five points on appeal, contending that the modification court erred in: (I) reducing, rather that increasing, Wife's maintenance; (II) calculating the proper amount of child support; (III) failing to order Husband to reimburse Wife for the children's various educational, extracurricular, and medical expenses; (IV) removing the legal custody provision providing Wife the authority to make final decisions; and (V) failing to order Husband to pay Wife's attorney's fees incurred during the modification proceedings.

### Standard of Review

Our review of the modification judgment is limited to whether it is supported by substantial evidence, is against the weight of the evidence, or erroneously declares or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Nichols v. Nichols*, 14 S.W.3d 630, 634 (Mo. App. E.D. 2000). The evidence, and all reasonable inferences therefrom, is viewed in the light most favorable to the judgment. *Id.*

**Point I—The Parties Agreed to Increase Maintenance**

In her first point on appeal, Wife contends the modification court erred in decreasing maintenance because, pursuant to the terms of the MSA, the parties agreed to increase the amount of maintenance awarded to Wife if Husband gained employment that would support their standard of living during the marriage. We agree.

## A. The Modification Court Erred in Ignoring the MSA

■ Separation agreement decretal maintenance is "agreed to by the parties and incorporated into the dissolution decree." *Barbeau v. Barbeau*, 72 S.W.3d 227, 229 (Mo. App. E.D. 2002); Section 452.325.1.[2] When so incorporated, this type of maintenance becomes part of the court's judgment, and is binding upon and enforceable by the court. Section 452.325.2; *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 391-92 (Mo. banc 2001) (Incorporation allowed so long as the agreement is not unconscionable).

■ When interpreting a marital separation agreement, the normal rules of contract construction apply. *Daily v. Daily*, 912 S.W.2d 110, 114 (Mo. App. W.D. 1995). "The cardinal rule in the interpretation of a contract is to ascertain the intent of the parties and to give effect to that intent." *Royalty v. Royalty*, 264 S.W.3d 679, 684 (Mo. App. W.D. 2008). "This is done by giving the words of the agreement their plain and ordinary meaning as understood by a reasonable and average person." *Daily*, 912 S.W.2d at 114. The construction of a contract is generally a question of law, which we review *de novo*. *Wood v. Wood*, 2 S.W.3d 134, 138 (Mo. App. S.D. 1999).

Here, the modification court erred as a matter of law in failing to give effect to the MSA, which was incorporated into the Dissolution Judgment.[3] The MSA reads, in relevant part:

a. Terms of Payment and Duration. It is reasonable for and [Husband] shall pay to [Wife] the sum of $2,000 per month as and for modifiable maintenance....

* * *

b. The parties understand that they are unable to maintain the standard of living during the marriage because [Husband] is unemployed. The parties understand that this amount is modifiable once [Husband] becomes employed....

■ This provision clearly governs the parties' modification proceeding herein. However, the modification court premised its judgment on whether a substantial change in circumstances had occurred, pursuant to Section 452.370.1, instead finding that since Wife's reasonable expenses had decreased since the dissolution, a decrease in maintenance was warranted. This is error, for the trial court cannot ignore the bargained-for terms of the parties' marital separation agreement. *Lueckenotte*, 34 S.W.3d at 391-92; *State ex rel. Riverside Pipeline Co., L.P. v. Pub. Serv. Comm'n of State*, 215 S.W.3d 76, 84 (Mo. banc 2007) ("A contract must be construed as a whole so as to not render any terms meaningless, and a construction that gives

2. All statutory references are to RSMo Cum. Sup. 2012, unless otherwise indicated.

3. Without dispute, this matter was highly contested. Of concern, the trial court has adopted, essentially verbatim, Husband's proposed findings of fact and conclusions of law, which failed to reference this provision of the MSA in resolving the maintenance issue. In cases such as this one, the trial court should take care in adopting one party's interpretation of the case, especially where, as here, Husband's proposed findings are so one-sided as to ignore the agreement governing modifi-

cation of maintenance—a critical factor in the resolution of the maintenance issue. *See Neal v. Neal*, 281 S.W.3d 330, 337 (Mo. App. E.D. 2009); *see also Massman Const. Co. v. Mo. Hwy. & Transp. Commn.*, 914 S.W.2d 801, 804 (Mo. banc 1996) ("Advocates are prone to excesses of rhetoric and lengthy recitals of evidence favorable to their side but which ignore proper evidence or inferences from evidence favorable to the other party. Trial judges are well advised to approach a party's proposed order with the sharp eye of a skeptic and the sharp pencil of an editor.").

a reasonable meaning to each phrase and clause and harmonizes all provisions is preferred over a construction that leaves some of the provisions without function or sense.").

## B. Husband's Substantial Increase in Income Requires an Increase in Maintenance.

In reviewing this point on appeal, we must apply the terms of the MSA to this modification proceeding, in order that we may "ascertain the intent of the parties and to give effect to that intent." *Daily*, 912 S.W.2d at 114. If the language of a marital separation agreement is in dispute, the court must determine the parties' intent as manifested in the document itself and not by what the parties say they intended. *Id.*; *Wood*, 2 S.W.3d at 138 (An agreement is not ambiguous merely because parties disagree over its meaning). Therefore, we turn to the language of the MSA to resolve the parties' dispute.

During the initial dissolution proceedings, the parties agreed that Husband would pay Wife $2,000 per month in maintenance, stipulating that they were "unable to maintain the standard of living during the marriage because [Husband] is unemployed." They agreed that the amount was modifiable "once [Husband] becomes employed." Essentially, Wife argues that because Husband is now employed, and because he is earning an income comparable to what the parties enjoyed during the marriage, these terms mandate an increase in maintenance.

In Missouri, generally, a spouse's post-dissolution increase in income does not, alone, establish a *per se* basis for a modification. *Zalar v. Harrington*, 786 S.W.2d 883, 885 (Mo. App. E.D. 1990); *McKown v. McKown*, 280 S.W.3d 169, 173 (Mo. App. W.D. 2009) (the increase in income of an obligee spouse will not automatically justify modifying maintenance); *see also Lee v. Lee*, 10 Ohio App.3d 113,

460 N.E.2d 710, 712 (1983) (generally, there is no right of one spouse to share in the improved circumstances attained by the other spouse after the divorce if not contemplated in the dissolution judgment.). Here, however, the MSA *does so contemplate* a modification premised solely upon Husband's employment. The plain language of the MSA states as much: "The parties understand that this [maintenance] amount is modifiable once [Husband] becomes employed." Thus, the court is mandated to apply the terms of the parties' agreement to this modification. *Royalty*, 264 S.W.3d at 684 ("The cardinal rule in the interpretation of a contract is to ascertain the intent of the parties and to give effect to that intent.").

The question becomes, what procedure did the parties intend for the modification court to apply? No Missouri court has opined on a contractual provision such as this. Upon review of cases from other states that have applied similar facts to modification proceedings, we find instructive those cases that concluded maintenance should be increased "under appropriate circumstances."

In these jurisdictions, when "the obligor spouse was ordered to pay maintenance based upon his or her income at the time of the dissolution, but [the award] did not meet the needs of the other spouse," a substantial increase in the obligor spouse's income—alone—would justify an increase in maintenance so as to satisfy the obligee spouse's *original* needs. *Cole v. Cole*, 44 Md.App. 435, 409 A.2d 734, 740 (1979); *see also Santiesteban v. Santiesteban*, 579 So.2d 891, 892 (Fla. App. 3 Dist.1991) ("A recipient spouse may seek modification of an alimony award without showing substantial post-divorce increase in need where the paying spouse, who was financially unable to pay more at the time of the final judgment, later has the ability to pay

a greater amount and where the recipient spouse's original needs remain unmet.").[4] The checks and balances of this exception were succinctly espoused by the Florida Court of Appeals:

> This exception [applies] in the relatively rare case where the recipient spouse's needs, as established by the standard of living maintained during the marriage, were not, and could not be, initially met by the original final judgment of marriage dissolution due to the then-existing financial inability of the paying spouse to meet those needs, which needs continue to remain unmet at the time modification is sought. Where such a paying spouse's earnings substantially increase subsequent to the final judgment and the recipient spouse's needs continue to remain unmet, it has been held that such spouse is entitled to an upward modification in alimony.

*Schlesinger v. Emmons*, 566 So.2d 583, 584 (Fla. App. 2 Dist. 1990) (internal citations omitted); *see also Roberts v. Roberts*, 744 S.W.2d 433, 436 (Ky. App. 1988) ("The receiving spouse 'has some expectation that he or she will be supported according to the standard of living established during the marriage to the extent that is possible.' ").

For instance, the Maryland Court of Appeals applied this exception to a set of facts that closely resemble this matter, save for the MSA. *See Lott v. Lott*, 17 Md.App. 440, 302 A.2d 666 (1973). In *Lott*, after a 16 year marriage, the husband deserted his wife and child, disappearing with his paramour for approximately nine months. *Id.* at 668. At the time of the desertion, the parties enjoyed a rather high standard of living, supported by husband's "lucrative" medical practice. *Id.* Upon husband's return, wife obtained a divorce from husband, who was making significantly less in income at the time of divorce due to deserting his medical practice. *Id.* Accordingly, the divorce judgment awarded the wife maintenance reflecting husband's low income at that time. *Id.* Following the divorce, husband's income substantially increased, approximating his income prior to his desertion. *Id.*

About one year after the divorce, the wife petitioned for, *inter alia*, an increase in maintenance. *Id.* She conceded during the modification proceeding that her needs had not substantially changed since the date of the original alimony award. *Id.* Nevertheless, the modification court ordered an increase in the wife's alimony in direct proportion to the increase in the husband's net earnings since the original decree. *Id.* at 672. In affirming the modification court's increase in maintenance, the appellate court exhaustively explored the law and facts that revealed the wife needed an increase in order to maintain the standard of living to which she was entitled at the time of the original divorce judgment. *Id.* The appellate court justified the increase because the original maintenance award did not meet her needs due to the husband's self-induced temporary reduction to his income at the time of dissolution. *Id.*

■ Here, we find that the parties effectively incorporated the "appropriate circumstances" exception into their MSA, which is binding upon the court once incorporated into the Dissolution Decree.

---

4. This does not mean that irrespective of the obligee spouse's needs he or she is automatically entitled to an increase in maintenance so as to keep pace with the obligor spouse's post-dissolution standard of living. *Cole v. Cole*, 44 Md.App. 435, 409 A.2d 734, 740 (1979). Rather, this exception appears to be more appropriately applied in circumstances where the obligee spouse's reasonable needs were not adequately satisfied through the initial award of maintenance.

*Lueckenotte*, 34 S.W.3d at 391-92. The plain language of the MSA states that the initial maintenance award of $2,000 per month was inadequate to maintain the standard of living the parties had become accustomed to during the course of the marriage, due to Husband's self-induced temporary reduction of his income at the time of dissolution. Accordingly, the parties bargained for a lesser amount of maintenance initially, but established a modification procedure where, upon Husband's employment, either party could initiate a modification proceeding to increase *or decrease* the maintenance amount, depending on Husband's 'future' salary. This agreement is neither irrational nor surprising; had the parties proceeded to trial on their dissolution, rather than reached a settlement, it is likely Husband would have been imputed income based on his salary for the years leading up to the divorce, resulting in a maintenance award much higher than $2,000. *See, e.g.*, *Layden v. Layden*, 514 S.W.3d 667, 675 (Mo. App. E.D. 2017) ("[I]n spite of a reduction in income, the modification court may impute income to a spouse according to the spouse's ability to earn by using his or her best efforts to gain employment suitable to the spouse's capabilities.").

Adopting Husband's interpretation of the MSA—relegating these terms to nothing more than a statement of the obvious—would, among other things, lead to an absurd result. *Wildflower Community Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 536 (Mo. App. W.D. 2000). ("When interpreting contracts, this court attempts to avoid absurd results."). Husband was imputed income of $103,800 in the Dissolution Judgment, and now enjoys a combined household income of over $550,000. Meanwhile, Wife was imputed no income in the Dissolution Judgment, but was imputed a meager $26,236 in income—as if fully employed—in the Modification Judgment. It strains credulity that Wife bargained to

*lower* her award in these circumstances when Husband's income vastly increased upon his gainful employment, resulting in Husband potentially returning to *an even higher* standard of living he enjoyed during the marriage.

Husband, nevertheless, contends Wife's reasonable expenses have decreased since the entry of the Dissolution Judgment. However, and again, it is neither irrational nor unsurprising Wife's expenses have decreased since the dissolution, as the MSA explicitly states the initial maintenance award was inadequate for the parties to maintain the standard of living during the marriage. Effectively, Husband seeks to renege on his agreement, and skirt his responsibilities set forth in the MSA, therein penalizing Wife for reaching a settlement with Husband. Thus, it would be unreasonable to focus on Wife's reasonable needs as they stood at the time of the modification trial, as it allows Husband to keep an artificially low award maintenance award from his unemployed period, only to have the amount lowered further after his shared income more than quadrupled upon his employ.

Thus, upon Husband's reemployment at a salary much greater than that *he* enjoyed during the marriage, the court is required to order an increase in maintenance so that Wife, too, may return to the standard of living *she* enjoyed during the marriage. *See Lott*, 302 A.2d at 670, *see also Hammer v. Hammer*, 139 S.W.3d 239, 245 (Mo. App. W.D. 2004) ("The purpose of maintenance is to achieve a just result in light of the relevant considerations.").

### C. Conclusion to Point I

We reverse the modification court's judgment decreasing Wife's maintenance award, and remand with instructions to increase Wife's maintenance award based upon the standard of living the par-

ties enjoyed during the course of the marriage.[5] On remand, in modifying Wife's maintenance award, the MSA does not prohibit the modification court from accounting for Wife's duty or failure to become self-supporting and the extent to which any imputed income may reduce her reasonable needs, *Rustemeyer v. Rustemeyer*, 148 S.W.3d 867, 871 (Mo. App. E.D. 2004), or the economic implications of Husband's cohabitation with his new wife, *Schuchard v. Schuchard*, 292 S.W.3d 498, 500 (Mo. App. E.D. 2009).[6] *See* Section 452.370.1 (in modifying maintenance, the modification court must "consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits"). The effective date for this modification is within the court's discretion, *Payne v. Payne*, 206 S.W.3d 379, 387 (Mo. App. E.D. 2006), and may be retroactive to the date of service of summons. *Lueckenotte*, 34 S.W.3d at 398.

Point I is granted.

## Point II—Child Support Must Be Recalculated

In her second point on appeal, Wife contends the modification court erred in calculating child support, in that the modification court improperly imputed income to Wife, improperly calculated Husband's income, and improperly awarded Husband a 6% visitation credit.[7]

██ Under Missouri law, the modification court must first consider whether

maintenance will be awarded. The maintenance amount must be calculated before child support. *See Childers v. Childers*, 26 S.W.3d 851, 854 (Mo. App. W.D. 2000); *see also* Civ. Pro. Form No. 14, Line 1a, *Com. A.* ("If the court is establishing both child support and maintenance, the court shall first determine the appropriate amount of maintenance."). Accordingly, in light of the decision to reverse and remand the maintenance award under Point I, this court refrains from addressing the allegations of error Wife raised in Point II. *See Timmons v. Timmons*, 132 S.W.3d 906, 916-17 (Mo. App. W.D. 2004).

Therefore, on remand, the modification court must determine maintenance, then prepare an amended Form 14 and recalculate child support obligations per child, which may be retroactive to the date of service. *Lueckenotte*, 34 S.W.3d at 398.

Point II is granted.

## Point III—Wife's Requests for Reimbursable Expenses

In her third point on appeal, Wife contends the modification court erred in failing to order Husband to reimburse Wife for various expenses. Wife contends she provided substantial and credible evidence of these expenses and, therefore, pursuant to the Dissolution Judgment, Husband was obligated to reimburse her.

The Parenting Plan, incorporated into the Dissolution Judgment, provided for the allocation of additional expenses for the children in the following manner:

---

**5.** The modification court found Wife's reasonable expenses to be $15,662 at the time of dissolution.

**6.** Along with the finding of $15,662 as Wife's reasonable expenses at the time of dissolution, the modification court imputed Wife income at $26,236 per year, found Husband's annual salary to be $307,000 per year, found he received a $100,000 bonus in 2013, found Husband and Paramour enjoy a combined

household income of approximately $550,000 per year, and found a cost of living differential between Venice Beach, CA and Indianapolis, IN. These findings may be considered on remand when calculating the proper maintenance amount.

**7.** The Form 14 used as a basis for the Modification Judgment was not included in the record on appeal.

A. for any medical expenses incurred on behalf of the children and not paid by the health insurer, Husband agreed to pay 60% and Wife the other 40%;

B. for "education and extraordinary expenses," Husband agreed to pay 50% of the costs that were "incurred by agreement in writing by the parties," but "[i]n the event the parties do not agree on the expense, the parent enrolling the children in the activity shall be responsible for 100% of the expense;" and

C. for the private education expenses of the parties' youngest daughter, Husband agreed to pay 50%, up to the maximum amount of $2,000 per year.

During the modification proceedings, Wife claimed Husband owed between $29,000 and $69,000 for his share of the children's uninsured health care, extraordinary and education related expenses. The modification court denied reimbursement for any of these expenses.

### A. Medical Expenses

At trial, Wife presented spreadsheets and medical bills representing the amounts she paid to the insurer.[8] However, the modification court found the spreadsheets were not a "reliable calculation of what, if any, amounts were paid" by Wife, Husband, or the insurance company.

The party asserting the positive of a proposition bears the burden of proving that proposition. *Martz v. Martz*, 323 S.W.3d 53, 57 (Mo. App. S.D. 2010). Where a party has the burden of proof on an issue and where the evidence presented thereon is not conclusive, a judgment in favor of the opposing party requires no evidentiary support because the trier of fact may disbelieve the proponent's uncontroverted evidence. *Id.*

Wife's claim is similar to the wife in *Martz*, 323 S.W.3d at 57. Therein, the wife was unable to demonstrate which expenses requested were to reimburse for agreed-upon health care costs, as opposed to other expenses not agreed to by the parties. *Id.* The Missouri Court of Appeals, Southern District, found that wife's claim for reimbursable medical expenses was not supported by sufficient evidence and was against the weight of the evidence. *Id.*

> A party's own testimony is sufficient to sustain an award on matters like child support and past necessary expenses— no expert testimony is required. But simply producing evidence that, if believed, would be sufficient to support an award is not the same thing as convincing the fact-finder that the proposition is more likely true than not true. Even though testimony unsupported by documentation is admissible, it may not be persuasive. The trial court may, at its option, accept or reject such evidence.

*Id.* at 58 (citations omitted).

Here, the modification court similarly disbelieved Wife's testimony, and found her documentation deficient. On appeal, we will not reweigh the credibility determinations of the modification court. *See Martz*, 323 S.W.3d 53 at 58. ("The trial court is in a superior position to assess credibility ... and may accept or reject all, part, or none of a witness's testimony.").

### B. Extracurricular Expenses

During the Modification Trial, Wife admitted she could not present any written agreements between her and Husband as to any extracurricular expenses. Rather,

---

8. Our review is limited, in that Wife has not submitted exhibits in the record on appeal. *Rhodes v. Zhang*, 7 S.W.3d 7, 8 (Mo. App. E.D. 1999) ("It is appellant's duty to provide a full and complete record on appeal.").

the court found that Wife "was unilaterally making decisions regarding the children's education, regardless of whether there was a cost associated, and informing [Husband] after the fact." The court further found Wife's exhibits presented at trial "illustrate inaccurate accounting such that the Court is unable to calculate what, if any, costs have been paid by [Wife] in association with the children's education," and otherwise found Wife's testimony lacking credibility.

 The modification court did not err in denying Wife's claim for repayment of extracurricular expenses. Wife's testimony as to these expenses was insufficient, as the agreement requires Husband to pay for expenses only "incurred by agreement *in writing*." *See Hughes v. Hughes*, 23 S.W.3d 838, 841 (Mo.App. W.D. 2000) ("The court is to give the words of the agreement 'their plain and ordinary meaning as understood by a reasonable and average person.' "). Further, we will not reweigh the credibility determinations of the modification court. *See Id.*

### C. Private School Expenses for the Youngest Daughter

 The parties included in the Parenting Plan an agreement that Husband would pay 50% of the cost "for the private education of [the parties' youngest daughter], Bailey, up to the maximum amount of Two Thousand Dollars ($2,000) per parent per year." Despite this provision, the modification court denied Wife's request to order Husband to reimburse her for Bailey's private school expenses.

"The cardinal rule in the interpretation of a contract is to ascertain the intent of the parties and to give effect to that intent." *Royalty*, 264 S.W.3d at 684. "This is done by giving the words of the agreement their plain and ordinary meaning as understood by a reasonable and average person." *Daily*, 912 S.W.2d at 114. The construction of a contract is generally a

question of law, which we review *de novo*. *Wood*, 2 S.W.3d at 138.

Here, the plain and unambiguous language of the agreement states that Husband was to pay for half of Bailey's private school cost, up to $2,000 per year. At trial, Husband did not deny this provision's existence, nor the fact that Bailey was in fact enrolled in a private school. Husband also admitted that he received statements from the school with Bailey's education costs denominated therein. Thus, the trial court should have ordered Husband to reimburse Wife for these costs. *See Bolton v. Bolton*, 950 S.W.2d 268, 272 (Mo. App. E.D. 1997) (agreement requiring Husband to reimburse Wife for house payments was clear and unambiguous, therefore the court must follow the parties' instructions).

Husband avers he should not have to reimburse Wife because Wife failed to communicate with him regarding major decisions. However, at the time, the parties' legal custody arrangement allowed for Wife to make the final decision regarding all major decisions, which includes (per the agreement) "the choice or change of schools." Further, the record is replete with admissions from Husband that he was aware Bailey was enrolled in private school. Husband's argument is merely an obfuscation of his obligation under the plain language of the agreement.

Husband also contends the "in writing" provision (see section III.B, *supra*) also applies to Bailey's private school costs, concluding that since he never agreed in writing to allow Bailey to attend private school, he should not be responsible for her education. However, the specific language of the "Bailey clause" does not require the parties' to agree, in writing, to this cost. Therefore, applying the terms of the parties' bargained-for agreement, Wife is entitled to a 50% reimbursement for

Bailey's private schooling, up to $2,000 per year.

### D. Conclusion

The modification court is therefore ordered to calculate the cost of Bailey's private. school education, and order Husband to reimburse Wife for 50% of those costs, up to $2,000 per relevant year. The modification court's denial of Wife's other reimbursement requests under Point III is affirmed.

Point III is denied in part and granted in part.

### Point IV—Legal Custody Modification Was Proper

■■■ In her fourth point on appeal, Wife contends the modification court erred in removing her authority to make final decisions concerning the children.

The Dissolution Judgment provided for "Joint Legal Custody," and stipulated that if Husband and Wife disagree on a major decision, Wife "shall have final decision making authority." In Husband's motion to modify, he requested the court "modify the provision concerning legal custody . . . .".

At trial, the court heard testimony from both Husband and Wife concerning their communication (regarding decisions that affect the children). Additionally, Wife offered documentation demonstrating her efforts to communicate with Husband, including emails and texts.[9] The modification court found that Wife "did not discuss decisions with [Husband] prior to making them, but sends [Husband] written communication of the decisions that she makes for the minor children." The modification court removed Wife's authority to make final decisions, concluding the parties "have failed to discuss major decisions concerning the children" and "would benefit

by communicating by way of Family Wizard."

A trial court's custody determination is afforded greater deference than other decisions. *Rallo v. Rallo*, 477 S.W.3d 29, 35 (Mo. App. E.D. 2015). In fact, we presume that the trial court reviewed all of the evidence and based its decision on the child's best interests. *Id.* This court must affirm a custody determination unless we are firmly convinced that the welfare of the child requires an alternative arrangement. *Id.*

In *Vangundy v. Vangundy*, 937 S.W.2d 228 (Mo. App. W.D. 1996), the mother was initially vested with a similar authority to make final decisions. The father petitioned for a modification of the legal custody provision, and the trial court ultimately granted the father the authority over final decisions. *Id.* On appeal, the mother argued the trial court's judgment was not supported by substantial evidence and was against the weight of the evidence. *Id.* at 232. The Missouri Court of Appeals, Western District, affirmed, finding the trial court properly weighed the evidence and found an arrangement that was in the children's' best interest. *Id.* "When the status quo of a custody plan significantly and directly affects the welfare of the child—no longer serves the best interests of the child—the question becomes not whether a change should occur but to what extent." *Id.*

As in *Vangundy*, we find the modification court in this matter properly considered the best interests of the children, and even stated that Husband and Wife were agreeable to using Family Wizard "in order to document the communications between the parties and establish a record regarding discussions, decisions, and a pa-

---

9. Again, these exhibits were not included in the record on appeal, and therefore we can-

not conclusively determine their existence.

per trail regarding expenditures that are to be shared." This modest change to the legal custody provision was supported by substantial evidence, and not against the weight of the evidence. *Vangundy*, 937 S.W.2d 228.

Point IV is denied.

**Point V—The Court May Reconsider Wife's Request for Attorney's Fees**

In her fifth point on appeal, Wife contends the modification court erred in failing to award Wife attorney's fees, averring that disparity in the parties' incomes necessitates an award.

*Analysis*

 In resolving a party's request for attorney's fees under the authority of Section 452.355.1, the trial court may consider "all relevant factors, including (1) the financial resources of the parties, (2) the merits of the case, and (3) the actions of the parties during the pendency of the action." *C.K. v. B.K.*, 325 S.W.3d 431, 437 (Mo. App. E.D. 2010). We review the decision of the trial court to grant or deny attorneys' fees for abuse of discretion. *Katsantonis v. Katsantonis*, 245 S.W.3d 925, 929 (Mo. App. E.D. 2008).

In her motion to modify, Wife requested the modification court order Husband pay her attorney's fees, due in large part to the financial disparity between them. The modification court denied Wife's request, stating that Wife was responsible in part for the length of delay in the proceedings, and that Wife ultimately presented non meritorious claims in her motion to modify. Therefore, despite the financial disparity, the court ordered each party to pay their own attorney's fees.

On remand, we have ordered the modification court to recalculate maintenance, pursuant to the terms of the MSA, necessitating a recalculation of the child support provision, and have ordered Husband to reimburse Wife for their youngest daughter's private school costs. Wife has therefore established a partially meritorious claim. Accordingly, on remand, the modification court should reexamine Wife's request for attorney's fees. *See Katsantonis*, 245 S.W.3d at 930 (Financial inability of the spouse to pay attorney's fees is not a requirement for awarding attorney's fees. On the other hand, one party's greater ability to pay is sufficient to support an award of attorney's fees.).

Point V is granted.

**CONCLUSION**

The judgment of the modification court is affirmed in part, reversed in part, and remanded with the following instructions:

I. The modification court must apply the terms of the MSA to the maintenance calculation, increasing Wife's award of maintenance;

II. The modification court must thereafter recalculate child support, using the revised maintenance figure;

III. The modification court must grant Wife's request for expenses concerning the private schooling of their youngest daughter, up to $2,000 per year, as per the terms of the MSA;

IV. The modification court may reconsider Wife's request for attorney's fees, considering the findings herein.

Robert M. Clayton III, P.J. and Mary K. Hoff, J., concur.